Robert L. SNOKE, Appellant,

v.

The STATE of Texas, Appellee.

No. 447–88.

Court of Criminal Appeals of Texas, En Banc.

Sept. 13, 1989.

Rehearing Denied Nov. 22, 1989.

Frank W. Sullivan, III, Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, Richard Roper, Lee Joyner and Betty Stanton, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

Appellant was convicted of theft of property over $200 but less than $10,000, and received a five year probated sentence. He appealed and filed an affidavit of indigency, seeking to obtain a free statement of facts. The application was heard and denied by the trial court, and his conviction was affirmed by the court of appeals in an unpublished opinion. *Snoke v. State*, No. 02–82–140–CR (Tex.App.—Ft. Worth 1983). Appellant petitioned this Court for discretionary review, and subsequently the court of appeals' opinion was reversed and the appeal was abated in order that appellant be furnished with a copy of the transcription from the trial court's hearings on indigency. *Snoke v. State*, 717 S.W.2d 5 (Tex. Cr.App.1986). Upon remand, the court of appeals once again affirmed appellant's conviction, holding the trial court's finding that appellant was not indigent was not an abuse of discretion. *Snoke v. State*, No. 02–82–140–CR (Tex.App.—Ft. Worth 1988). Appellant once again filed a petition for discretionary review, alleging that this latter holding conflicts with prior decisions of this Court. See Tex.R.App.Pro.Rule 200(c)(3).

Two hearings were held by the trial court in order to determine whether appellant was indigent.[1] Appellant testified at the first hearing, held on July 7, 1982, that: he was represented at trial by retained counsel, but was not able to hire counsel for his appeal; he desired to appeal the conviction; an attorney's fee would be between $2,500 to 6,000; the court reporter would charge $3,066 for the statement of facts; he could not pay or give any security for the record; appellant could borrow only $500 against his pickup, the only operational vehicle he owned; he had only $200 in cash with him at the hearing; his house was mortgaged, and he had no other property to borrow against; appellant had filed an insurance claim for the second of two fires at his home, which was unresolved at the time of the hearing; he had about $150 in savings; he was unable to obtain employment; he owned property worth $16,000 but, due to the current real estate situation, he could only get about $8,000 for it, and even if he sold it, the amount he owed on the property would be more than what he could realize from its sale; appellant had received $54,000 in insurance money from the first fire at his home, but had used it for house repairs. At the second hearing held August 5, 1982, appellant testified that: he had less money at this hearing than he had before; his insurance company refused to pay his pending claim; appellant had deposited the $54,000 recovered from the insurance company for the first fire, but had used all of it for repairs, and the money was not his anyway, but belonged to the mortgagee for the purpose of repairing the house; he withdrew $10,000 and $17,000 from two separate bank accounts in April or May 1982, which he used to pay back child support, living expenses, and attorney's fees; before the first hearing, he had withdrawn and paid out $6,000 in debts, including monies to his exwife. Thus, he now claims, the record supports his contention that he had no money to pursue his appeal, pay an appellate attorney or secure a copy of the record. The money he possessed prior to the appeal had been used to pay back child support and to make repairs to his home after a fire. Appellant thus asserts he had made out a prima facie case of indigency, which was not rebutted by the State.

It is the duty of the trial court to provide an indigent defendant with an adequate record on appeal. *Abdnor v State*, 712 S.W.2d 136, 139 (Tex.Cr.App.1986). There are no rigid standards to guide the trial court in its determination of indigency; each case must be decided upon its own merits. *Cardona v. Marshall*, 635 S.W.2d 741, 742 (Tex.Cr.App.1982); *Barber v. State*, 542 S.W.2d 412, 413 (Tex.Cr.App. 1976). However, some rules have been developed over the years. In order to obtain a statement of facts free of charge, a defendant claiming indigency status must

---

1. See Tex.R.App.Pro.Rule 53(j)(2), formerly Art. 40.09(5) V.A.C.C.P.

first exercise due diligence in asserting his indigency, including timely filing his affidavit, and second, he must sustain the allegations of his affidavit as to indigency at the hearing. *Abdnor v. State*, supra at 140–41. The court must consider only the defendant's personal financial conditions, not those of his parents, other relatives, friends or employers. *Rosales v. State*, 748 S.W.2d 451, 455 (Tex.Cr.App.1987). Indigency must be determined at the time the appeal is filed, not at the time of trial. *Abdnor v. State*, supra at 142.

■ Once a prima facie showing of indigency is made out, the defendant has shown his entitlement to the record unless evidence is offered which refutes his claim. *Id.* at 139, 141; *Castillo v. State*, 595 S.W.2d 552, 554 (Tex.Cr.App.1980); *Zanghetti v. State*, 582 S.W.2d 461, 463 (Tex. Cr.App.1979; *Stephens v. State*, 509 S.W.2d 363, 365 (Tex.Cr.App.1974). In essence these cases hold that the defendant at an indigency hearing bears an initial burden to go forward with evidence to substantiate his sworn allegation of indigency. Once he has met this burden of production, the onus shifts to the State to persuade the trial court as fact finder that he is not in fact indigent. Such allocation of burdens best serves to protect the truly indigent defendant's right to effective assistance of counsel on appeal. If a defendant is to perfect a meaningful appeal, he must be denied neither the record nor the services of counsel merely because he cannot afford them. See *Stephens v. State*, supra at 365–66, citing *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) and *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

As diligence is not the issue here, the question we must entertain is whether the trial court and the court of appeals erred in finding appellant was not indigent for purposes of obtaining a free statement of facts.

2. See, e.g. *Cardona v. Marshall*, supra at 743, where the defendant, while awaiting trial and after alleging indigency, transferred $12,979 to

■ Upon examination of the record, it appears appellant has indeed made a prima facie case of indigency. The court of appeals, in denying appellant's claim, seemed to rely solely on certain admissions made by appellant on cross examination by the State. Appellant was the only witness to testify at the hearing. No witnesses or other evidence were presented on behalf of the State. The court below held the State's "evidence" obtained on crossexamination contradicted his direct testimony. The court found that:

"appellant had some college education; he was physically 'good-sized,' although unemployed; he was physically able to work, but had not attempted to find employment either through the Tarrant County Probation Department or through any employment agencies. On the day before the first day of the hearing on appellant's claim of indigency, he withdrew $6,000 from a bank account. Appellant was incapable of providing a complete explanation of his disposition of the $6,000. Appellant lived alone in a rent house provided to him rent free. Appellant acknowledged receiving more than $50,000 for a fire insurance loss, but made no offer of proof as to the disposition of that sum, all of which evidence was sufficient to support the trial court's finding that appellant was not indigent and had sufficient property and money available to him to afford a statement of facts."

*Snoke v. State*, supra at 2–3. The court found that appellant had failed to sustain his burden of proof pursuant to *Abdnor v. State*, supra.

■ The court of appeals incorrectly accepted as fact the State's assertions made during cross examination. The only "evidence" to support the trial court's findings are appellant's admissions that at some point in the past he had large sums of money. There is no evidence that he, at the time of the hearing, still had any money, or had fraudulently given it to someone else to hold for him.[2] Appellant explained,

his children to divest himself of funds in order to obtain appointed counsel, and a free appellate record. There we held defendant had failed

in response to the State's questioning, that he did have two large checking accounts before trial, but had used up one paying his trial attorneys' fees, and for living expenses. The other was used to pay his former wife a year's worth of back child support in compliance with conditions of his probation requiring him to support his daughter. On crossexamination, the State had suggested that appellant had $17,000 in one account and $10,000 in another just two months before trial, and that he had withdrawn the last $6,000 the day before his first indigency hearing, asking the teller not to let anyone know about the withdrawal. However, no proof of any of this was offered, and appellant never admitted any of these details.[3] He did admit that he had received $54,000 on his first fire insurance claim, but had used it all to rebuild his home, and for other expenses. His house had been completely destroyed by the second fire, and the lot was bulldozed. The second claim was still pending at the time of the hearing, and appellant admitted he had not pursued it because he was consumed with defending his criminal charges. The court of appeals' reliance on the State's assertions as fact, based on appellant's admission made during cross examination that he had received the first insurance settlement almost two years before trial, but failed to provide any documentation of how he had spent it was error.[4] The effect of such holding is that an appellant who admits that he used to have money can be held not to be indigent if the trial court does not believe his uncorroborated

testimony that he has spent it all for valid debts, even where there is no positive evidence that he still has money, or that he fraudulently diverted his former assets. The record in this cause supports appellant's assertions of indigency.

We hold the court below failed to apply correctly the standards for review set forth in *Abdnor v. State*, and *Rosales v. State*, supra. Appellant has made a prima facie showing of his right to a free record on appeal, which has not been substantively undermined by the State. See *Castillo v. State* and *Stephens v. State*, both supra.

 However, we note that seven years have elapsed since appellant's hearing on indigency was held. There is always the possibility that appellant's financial situation has changed and he is no longer indigent. *Castillo v. State*, supra at 554. Therefore, the opinion of the court of appeals is reversed and the appeal is abated in order that appellant be furnished with a copy of the statement of facts as an indigent for the purpose of his appeal, unless further facts are developed to show that some change has occurred since the last hearing and he is not now indigent. *Abdnor v. State*, supra at 144.

IT IS SO ORDERED.

---

to make a completed gift, but merely handed the money over to his daughter to use for the benefit of his other children, and there was no proof that the funds were unavailable for his use. Thus, defendant did not qualify for indigency status.

3. This situation is unlike the one in *Rosales v. State*, supra, where the defendant and his wife testified that they owned a home worth $48,000 to $68,000, had recently sold their business for $35,000, had monthly income from rental properties, and owned four vehicles. Defendant's wife was seeking employment, but even with both unemployed, they had an $800 per month income. There we held that, by defendant's own testimony he could sell or mortgage his property in order to pay for the statement of

facts, and so was not indigent. 748 S.W.2d at 456–57.

4. Appellant repeatedly stated that he had used the money rebuilding his house. The record also contradicts the court of appeals' finding that appellant had failed to pursue employment opportunities. At the first hearing, he testified that no one would hire him because of his conviction. At the second hearing, he said he had sought work through both the Tarrant County Probation Department and the Texas Employment Commission. Appellant also testified that he had sustained an injury that prevented him from standing for any length of time, which further hampered his job opportunities.