IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 2077-02






PATTI WHITEHEAD, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


JACKSON COUNTY






 KELLER, P.J., delivered the opinion of the Court in which MEYERS,
PRICE, JOHNSON, HOLCOMB and COCHRAN, JJ., joined. WOMACK, J. concurred in
the result. PRICE, J. filed a concurring opinion in which JOHNSON, HOLCOMB, and
COCHRAN, JJ., joined. HERVEY, J., filed a concurring opinion in which KEASLER, J.,
joined.


O P I N I O N 



I. BACKGROUND


A. Trial 


 Appellant was convicted of theft. After trial, she filed a motion for new trial and a "motion to
withdraw and request to proceed in forma pauperis." The latter motion (signed by defense counsel
Gaither, defense counsel Watts, and appellant) requested three items of relief: (1) to permit appellant's
retained attorneys to withdraw from the case, (2) to find appellant indigent for appellate purposes, and (3)
to appoint counsel to represent appellant on appeal. The motion stated that counsel talked to the court
reporter and was advised that the record consisted of "some nine thousand (9,000) pages" and would cost
around forty-five thousand dollars. Appellant also filed a monthly income and expense summary, a "net
worth" statement outlining assets and liabilities, and an affidavit verifying the accuracy of the financial
information in those two documents. Although the motion and appellant's affidavit bore separate filemarks,
the body of the motion stated that the affidavit and financial statements were attached to the motion.

 The income and expense summary listed a total monthly income of $4,069.33 and total monthly
expenses of $3,458.95, with $610.38 left over. Some of the expenses were or could be nonessential, such
as $39.88 for cable, $133.98 for phone, and $250.00 designated for "Misc." household expenses. In
addition to the mortgage ($565.39), the income and expense summary listed $231.83 for "Loans/Notes
Payable." Appellant's net worth statement listed a total of $5,071.36 of cash in bank accounts, the
$610.38 left over from the income and expense summary, a 1991 Chevrolet valued at $2,500.00, a 1995
Chrysler valued at $4,300.00, a house valued at $62,000.00, and investments of $1,664.08 - for total
assets of $76,145.82. The liabilities listed were a $51,048.68 home mortgage, $65,960.11 for legal
expenses, a $111,500.00 personal loan from Jesse Whitehead, a $3,231.09 personal loan for litigation,
and a $2,321.12 personal loan for medical expenses - for total liabilities of $234,061.00. 

 At a post-trial hearing conducted on January 16, 2002, the trial court considered the motions. 
After hearing testimony on the motion for new trial and denying that motion, the trial court asked, "What
other issues do we have?" Defense counsel Gaither informed the court that the other motion before it was
the motion to proceed in forma pauperis. When Gaither began by saying he was no longer representing
appellant, the trial court replied, "What do you mean you're not here as her representation? You're on the
case until the Court relieves you." Gaither responded, "Oh okay. Well, that's fine," and proceeded to
address the merits of the indigence question.

 Gaither told the court that "we tried to expedite" the indigence determination "process a little bit
by providing information attendant to that motion." The trial court stated that it had read appellant's
affidavit showing assets and liabilities. A discussion ensued regarding the State's subpoena for any records
showing the contract between appellant and her attorneys. The trial court reviewed Gaither's contract,
which excluded appeals from the scope of representation. The trial court then denied appellant's motion
to proceed as an indigent and granted Gaither's motion to withdraw. 

 Gaither then requested that the trial court order a free record for appellant under Texas Rule of
Appellate Procedure 20.2. (1) He argued that appellant would be entitled to a free record even if it were
determined that she was not entitled to an appointed attorney. This request was denied, but the trial court
did authorize making a record of the indigence proceedings for the purpose of appealing the trial court's
ruling regarding the requests for a free record and appointment of counsel. (2) Attorney Watts then expressed
his understanding that the motion to withdraw was intended to cover both Gaither and himself, but the trial
court replied that the motion was granted only as to Gaither. Although attorney Watts expressed a belief
that he was incompetent to handle appellant's appeal, (3) the trial court disagreed. Watts also stated that
appellant and her husband did not have the assets to buy the record and that appellant was ill, recovering
from cancer, and would have to go to the hospital after the hearing. At the end of the proceedings, Mr.
Gaither asked, "May we be excused?" and the trial court assented. No one requested that appellant be
allowed to testify about her financial status or that any other evidence be offered on that matter.

 On February 12, 2002, Watts and appellant filed affidavits. Watts's affidavit stated that appellant
was hospitalized for cancer and that the court reporter told him the record would cost no less than forty-five
thousand dollars, and she would require payment in advance unless the county paid for it. Appellant's
affidavit stated that she was hospitalized for cancer, without the means to employ counsel, and unable to
pay for or give security for the record in this cause.

 The notice of appeal was filed on February 12, 2002. On February 22, 2002, appellant filed with
the district clerk an affidavit from the court reporter. That affidavit stated that the record contained
approximately 13,000 pages and would cost approximately $65,000, not including the cost of exhibits. 
The affidavit further stated that the court reporter would require payment before she would begin work on
the record. The Court of Appeals granted appellant's motion to supplement the record with the affidavit.

B. Appeal


 Appellant raised three contentions in an appeal from the trial court's order denying indigent status. 
First, appellant argued that the trial court failed to follow the procedures set forth in Texas Code of Criminal
Procedure, Article 26.04 (4) regarding the determination of indigence. In this regard, she complained that
the trial court did not appoint a lawyer to represent appellant at the hearing on indigence and that the court
did not request that appellant complete a questionnaire or submit to examination from the court. Second,
appellant contended that the trial court abused its discretion in denying the requests for an appointed lawyer
and a free record. She claimed that the documents she submitted satisfied a prima facie showing of
indigence - shifting the burden of proof to the State and requiring a ruling in her favor if the State produced
no contrary evidence. Finally, she contended that the trial court abused its discretion in ordering Watts
to remain as appellate counsel. She argued that there was no evidence at the hearing that Watts had
entered into an agreement with her to represent her, that he was getting paid for his services, or even that
appellant wanted him to represent her on appeal. Although appellant conceded that Watts participated in
the trial, she claimed that such participation did not alone qualify him to pursue a criminal appeal on her
behalf. 

 The Court of Appeals found that the trial judge failed to comply with the procedures prescribed
by Article 26.04 regarding the appointment of counsel: "the trial judge wholly failed to make any inquiry,
or to consider any of the factors prescribed by article 26.04." (5) The Court of Appeals also found that
appellant made a prima facie showing of entitlement to a free record under Rule 20.2. (6) Finally, the Court
of Appeals found that the trial court abused its discretion in refusing to permit Watts to withdraw from the
case. (7) The Court of Appeals remanded the case to the trial court "to immediately conduct a hearing to
comply with Article 26.04 and Rule 20.2." (8) The Court further held that: 

On remand, the trial court may conclude that appellant is or is not indigent. If the court
finds she is not indigent, appellant may appeal that determination. However, if the Court
finds that appellant is indigent, the court must appoint counsel and direct the court reporter
to file the reporter's record in the appeal on the merits without charge. If the court so
finds, then it shall cause a supplemental clerk's record to be filed in the appeal on the
merits containing a signed, written order or orders to this effect. (9) 


 The State petitioned for discretionary review. We granted review to address the questions of
indigence and withdrawal of counsel. (10)

II. ANALYSIS


A. Scope of review


 General considerations governing appellate review apply here. An appellate court may not
consider factual assertions that are outside the record, (11) and a party cannot circumvent this prohibition by
submitting an affidavit for the first time on appeal. (12) While the record may be supplemented under the
appellate rules if something has been omitted, (13) the supplementation rules cannot be used to create new
evidence. (14) Moreover, an appellate court's review of the record itself is generally limited to the evidence
before the trial court at the time of the trial court's ruling. (15) 

 One issue we must address is whether an unsworn motion constitutes evidence in this context. In
the motion for new trial context, this Court has long imposed the rule that matters not determinable from
the trial record must be raised by sworn allegations (such as in an attached affidavit) in order to merit further
consideration by the trial court. (16) The reason for this judicially imposed rule was to prevent widespread
fishing expeditions. (17) We have also held that a motion is not self-proving in numerous other contexts, such
as: a motion for independent examination of an original tape recording, (18) a motion to dismiss the prosecution
for failure to afford a speedy trial, (19) a motion to dismiss court-appointed counsel, (20) a motion to withdraw
as counsel, (21) a motion to quash an enhancement allegation in an indictment, (22) a motion in arrest of
judgment, (23) a motion for continuance, (24) a motion to quash the jury panel, (25) and a motion to disqualify the
trial judge. (26) On the other hand, we have recently recognized legislative authorization for trial courts to
consider and resolve motions to suppress "on the motions themselves." (27) We found that the plain language
of Article 28.01 dictated this result. (28) So, while the general rule is that an unsworn motion does not, by
itself, present evidence upon which relief can be granted, the Legislature can modify that rule in a particular
context, if it so desires. 

 Unlike the motion-to-suppress statute, the appointment-of-counsel statute does not give the trial
court the option to rule upon an unsworn motion. (29) In fact, the appointment of counsel statute contains two
different oath requirements. First, upon requesting a determination of indigence, the defendant must detail
his financial resources under oath by completing a written questionnaire, by responding to examination by
a judge or magistrate, or by both. (30) Second, before a court determines that a defendant is indeed indigent,
the defendant must sign a form oath, provided by statute, stating that he is without means to employ
counsel. (31) 

 The appellate rule authorizing a free appellate record also contains an oath requirement. Rule 20.2
provides that a defendant, within the time for perfecting an appeal, may request a free record by "motion
and affidavit." (32) As with appointment of counsel statute, the free record rule does not offer the option of
ruling upon the motion itself. (33) We conclude, then, that only sworn allegations are to be considered in
determining whether a defendant is entitled to a free record. 

 We now apply the principles discussed above to this case. Assuming, without deciding, that the
February 12 affidavits from appellant and Watts and the February 22 affidavit from the court reporter were
properly part of the record, (34) we nevertheless hold that they cannot be considered in a review of the trial
court's order because the affidavits were not before the trial court at the time of its ruling. We also hold
that allegations in the motion to appoint counsel are not evidence for the purpose of appointing counsel or
for obtaining a free record. What remains will be considered under the appropriate standard of review,
to which we now turn. 

 B. Standard of review


 "The indigency determination is made on a case-by-case basis as of the time the issue is raised and
not as of some prior or future time." (35) We have articulated a two-step process for determining whether
a defendant is indigent for the purpose of obtaining a free record on appeal: (1) the defendant must make
a prima facie showing of indigence, and (2) when the prima facie showing is made, the burden shifts to
the State to show that the defendant is not in fact indigent. (36) This allocation of burdens "best serves to
protect the truly indigent defendant's right to effective assistance of counsel." (37) Once the defendant has
satisfied a prima facie showing, an appellate court can uphold a trial court's determination of non-indigence
only if the record contains evidence supporting such a determination. (38) We have at least implied that the
two-step process should also be used to determine whether to appoint counsel for appeal. Immediately
after the "allocation of burdens" rationale, we stated: "If a defendant is to perfect a meaningful appeal, he
must be denied neither the record nor the services of counsel merely because he cannot afford them." (39)

 The standard of review that attends this two-step process differs somewhat from the standard of
review articulated recently in Ross v. State. (40) In Ross, we upheld a trial court's ruling granting a motion
to suppress on the basis that the trial court might have completely disbelieved the testimony of the State's
witness, even though that testimony was uncontroverted. (41) If the Ross standard were applied to the case
at hand, the trial court could simply disbelieve appellant's statement in her affidavit that the financial
documents are an accurate depiction of her circumstances and, consequently, disbelieve the financial
documents themselves, which are simply appellant's summary of her financial situation. (42) 

 By contrast, our past cases suggest that the trial court does not have the nearly unfettered discretion
seen in other contexts to simply disbelieve the defendant's evidence of indigence. We have reversed a trial
court's failure to find indigence on nothing more than the defendant's own testimony. (43) The idea that a
defendant can make a prima facie showing suggests that a trial court should accept the defendant's
evidence absent some reason in the record for not doing so. (44) Of course, a trial court may require a
defendant to verify his claim of indigence with supporting documentation. (45) If the trial court does not
request verification, then the defendant's sworn allegations should be accepted unless the allegations are
suspect in a manner that verification would not remedy. 

 After considering the issue, we conclude that our past cases, rather than the standard articulated
in Ross, should continue to govern a trial court's determination of and appellate review of indigence
matters. By requiring the courts to formulate "procedures and financial standards for determining whether
a defendant is indigent," the Legislature has indicated a desire for the appointment of counsel to be more
strictly regulated than many other matters. (46) The Legislature further specified a list of factors to consider:

In determining whether a defendant is indigent, the court or the courts' designee may
consider the defendant's income, source of income, assets, property owned, outstanding
obligations, necessary expenses, the number and ages of dependents, and spousal income
that is available to the defendant. The court or the courts' designee may not consider
whether the defendant has posted or is capable of posting bail, except to the extent that
it reflects the defendant's financial circumstances as measured by the considerations listed
in this subsection. (47)


Moreover, the appointment of counsel statute appears to contemplate that information about the
defendant's financial condition will ordinarily come from the defendant. (48) And while the Legislature could
have required the submission of third-party documentation to support a claim of indigence (e.g. payroll
slips, bills from third parties), it did not, opting instead to require the defendant to fill out a questionnaire
or answer questions under oath and leaving to the trial court the discretion to request supporting
documentation. And the statute contains many other requirements designed to ensure that indigent
defendants obtain counsel. (49) Thus, the statute seems designed to ensure representation of indigent persons
by increasing the accountability of the judges who make the determination. That design is inconsistent with
a standard that would give judges virtually unbridled discretion to reject a defendant's allegation of
indigence. More consistent with the apparent legislative intent would be a requirement that judges accept
the defendant's financial allegations (so long as they are made under oath) absent any reason to believe they
are untrue or incomplete.

 Further, the original policy reason for a less deferential review, articulated in our prior cases, still
applies: it better promotes the policy of adequately affording legal representation to indigent persons. If
a defendant's financial allegations may always be disbelieved, and the defendant must prove his indigence,
then effective review of a trial court's indigence determination would be stymied, and there would be an
increased risk that truly indigent defendants would be deprived of counsel. And the disadvantages of
erroneously ruling in the defendant's favor are relatively innocuous. Erroneously finding the defendant
indigent would not affect underlying substantive determinations - as would, for instance, erroneously
suppressing evidence. The question of indigence is subject to reconsideration if the defendant's financial
status changes, (50) and, at least in the case of appointed counsel, the defendant can be required to reimburse
the cost of legal services if it is later determined that he is able to do so. (51)

 Although the standard of review for a trial court's determination of indigence is not as deferential
as the standard in Ross, deference is still a part of the standard. The trial court is not completely free to
disbelieve the defendant's allegations concerning his own financial status, but the trial court may disbelieve
an allegation if there is a reasonable, articulable basis for doing so, either because there is conflicting
evidence or because the evidence submitted is in some manner suspect or determined by the court to be
inadequate. (52) 

 C. Hearing


 Before we review the facts of this case, we examine whether the trial court conducted an adequate
hearing. It is important to recognize that the trial court's duty diverges for the two indigence questions, i.e.
indigence for the purpose of a free record and indigence for the purpose of free counsel. To obtain a free
record, the defendant must exercise due diligence in asserting his indigence and must sustain his allegations
at the hearing. (53) By contrast, the right to an attorney is a "waivable-only" right, (54) and absent a waiver, the
courts have an affirmative obligation to ensure that an indigent appellant has counsel. (55)

 The Court of Appeals's remand order requires the trial court to reconsider the question of
indigence in both contexts. While the Court of Appeals faulted the trial court for conducting an inadequate
inquiry regarding the appointment of counsel, it did not specifically fault the trial court's inquiry as it
pertained to the request for a free record. Instead the Court of Appeals held that appellant had made a
prima facie case and apparently assumed further inquiry was warranted. The remand order is erroneous
on both counts.

 Appellant submitted "an income and expense summary" and a "net worth statement," along with
a signed affidavit swearing that the information contained in these financial documents was true. The
defense tendered these documents to "expedite" the indigence determination process. Under these
circumstances, the documents served the same purpose as answering a written questionnaire and thus
sufficed to meet the requirements of Article 26.04(n)(1). Moreover, a hearing was conducted, and the trial
court did nothing to limit its scope. The trial court considered the financial documents submitted by
appellant, the arguments of counsel, and the sworn testimony of attorney Watts. While appellant now
indicates there was other evidence to be considered, she did not attempt to introduce other evidence at the
hearing. We have no reason to believe that the trial court would have refused to allow the introduction of
other evidence, such as live testimony from appellant, had that evidence been offered. Nor do we see any
significant gaps in the financial picture offered by appellant. She purported to itemize all income, expenses,
property, assets, and debts. (56) As for the Court of Appeals's conclusion that appellant made a prima
facie showing that she could not pay for the record, that conclusion, if true, would justify relief rather than
a remand for further proceedings. A remand would be required only if the trial court had deprived the
State of the opportunity to respond to appellant's evidence. But the State had the same opportunity as
appellant to offer whatever evidence it wished. 

 Of course, either party may move for reconsideration of the trial court's determination on the
question of indigence if circumstances have materially changed since the trial court ruled. (57) We have
likewise recognized the ability to reconsider the indigence question in connection with determining whether
the defendant is entitled to a free record. (58) No request for reconsideration based upon changed
circumstances has been made.

 D. Indigence


 We now turn to a review of the trial court's indigence determinations in this case. In the
appointment of counsel context, a defendant is indigent if he is financially "without the means to employ
counsel" of his own choosing. (59) For the purpose of determining entitlement to a free record, a defendant
is considered indigent if he "cannot pay or give security" for the appellate record. (60) While these inquiries
generally involve the same factors to be considered, it is possible for a defendant to be indigent in one
context but not the other. In Castillo v. State, for example, the defendant had managed to retain counsel,
but we determined that he could not pay for a transcription of the court reporter's notes. (61) 

 Relevant to both inquiries are the factors set out in the appointment of counsel statute, previously
quoted in this opinion: the defendant's income, source of income, assets, property owned, outstanding
obligations, necessary expenses, the number and ages of dependents, spousal income available to the
defendant, and ability to post bail to the extent that ability relates to the other factors. The ability of the
defendant to borrow funds is something that may be taken into account in considering how the defendant's
assets and property relate to the ability to pay. (62) Of course, a defendant should not be required to borrow
money that can never be repaid except by depriving the defendant of the necessities of life. (63) And the
expense involved in hiring counsel or paying for the appellate record is also a valid consideration. It is this
last category that produces the greatest possibility of a divergence in the defendant's ability to pay in these
two contexts.

 We now turn to the merits of appellant's claims of indigence. Although appellant's "net worth"
statement alleges that her liabilities outweigh her assets, a negative net worth is by no means determinative. 
In deciding that corporations cannot qualify for in pauperis treatment on appeal, the Supreme Court
indicated that corporate insolvency and individual indigence are not necessarily the same because a
temporarily insolvent corporation may be perfectly able to pay court costs and retain legal counsel. (64) 
Likewise, an individual's negative net worth does not necessarily translate into indigence; the real question
is whether the defendant is capable of paying for legal counsel and for the appellate record.

 By appellant's own admission, she had over $5,000 cash in bank accounts, over $1,600 in
investments, two cars totaling $6,800, and $10,000 worth of equity in her home. Appellant also had, by
her own admission, a net household income, after all expenses were paid, of $610.38 a month. These are
substantial amounts of money. 

 Moreover, the $111,500.00 loan from "Jesse Whitehead" appears to be a loan from a relative, and
there is no indication what the loan is for. The trial court could have reasonably believed the loan did not
have to be repaid right away. Appellant did not include payments for legal expenses on her income and
expense sheet, though she claimed the debt. The trial court could have concluded that the $65,960.11
litigation debt and the $3,231.09 litigation loan were not immediately payable. Further, the trial court could
have reasonably believed that the expense summary contained unnecessary items. Under the
circumstances, the trial court could have reasonably believed that appellant was not indigent for the purpose
of appointing counsel.

 Of greater concern is the cost of the record. If the record costs $65,000 or more, there could be
a serious question about whether appellant had the funds to pay for it, especially if advance payment were
required. However, appellant failed to introduce before the trial court competent evidence of the cost of
the record or that the record would have to be paid for in advance. The motion was not evidence because
it was not sworn, and the affidavits regarding this matter were not before the trial court at the time of its
ruling. While the record from the hearing on indigence makes it clear that the trial proceedings were
lengthy, we are unable to conclude that the trial court abused its discretion, absent some evidence showing
at least a ballpark figure for the cost of the record.

E. Request to withdraw


 Finally, we address appellant's contention that the trial court abused its discretion in refusing to
permit Watts to withdraw as counsel. Retained trial counsel has a duty to ensure that a notice of appeal
is filed if the defendant wishes to appeal. (65) The attorney then has two options: (1) he can effectively
volunteer to serve as appellate counsel by signing the notice of appeal himself, or (2) "the defendant may
file the notice pro se, which serves as an indication that trial counsel does not wish to pursue his client's
appeal." (66) Nothing in the appellate rules requires retained trial counsel to serve as counsel on appeal if
he does not sign the notice. (67) In fact, Rule 6.4 specifically bars appointed counsel in a criminal case from
filing a "nonrepresentation" notice but does not mention retained counsel. Retained counsel must file a
motion to withdraw, (68) but that motion should ordinarily be granted. (69) If there is a question of indigence,
however, the trial judge may delay leave to withdraw until the indigence proceedings are complete. (70)

 Although the trial court was within its discretion to require appellant's retained attorneys to remain
counsel for the duration of the indigence hearing, the trial court abused its discretion when it denied Watts's
motion to withdraw after the question of indigence was determined. The situation might have been different
if Watts had had an agreement with appellant to represent her on appeal, but he did not. While the better
practice might be for an attorney to expressly exclude appeals in a written contract, as Gaither had done,
retained trial counsel is not bound to represent a defendant on appeal absent an agreement to do so.

III. DISPOSITION


 In summary, we hold that the Court of Appeals erred in holding that the trial court failed to conduct
an adequate indigence hearing. We also hold that the Court of Appeals erred in holding that appellant
made out a prima facie case of indigence for Rule 20.2 purposes. However, we hold that the Court of
Appeals correctly held that the trial court abused its discretion when it refused to permit Watts to withdraw
after the indigence question was decided. 

 The judgment of the Court of Appeals is reversed in part and affirmed in part. The case is
remanded to the trial court to determine whether appellant wishes to appeal the judgment of conviction,
and if so, whether she wishes to proceed pro se or with retained counsel. If Watts so desires and appellant
consents, he may volunteer to remain as retained counsel; otherwise, he must be permitted to withdraw. 
The trial court is free to reconsider appellant's indigence under Article 26.04 or Rule 20.2 if it finds a
material change in circumstances has occurred since it last considered the issue. Otherwise, appellant's
notice of appeal from the judgment of conviction will be due 30 days from the date mandate issues in this
case, and if notice of appeal is filed, the record will be due 120 days from the date of mandate. (71)


 KELLER, Presiding Judge

Delivered: March 31, 2004

Publish
1. All further references to rules are to the Texas Rules of Appellate Procedure.
2. The trial court properly ordered transcription of the indigence hearing for review of its
indigence ruling on appeal. See Snoke v. State, 717 S.W.2d 5, 6 (Tex. Crim. App. 1986). 
3. At this time Watts also stated that he still considered himself to be under oath. He had
testified earlier in the hearing, regarding the motion for new trial.
4. All further references to articles are to the Texas Code of Criminal Procedure.
5. Whitehead v. State, No. 13-02-098-CR, slip op. at 9 (Tex. App.-Corpus Christi, October
31, 2002)(not designated for publication).
6. Id. at 9-10.
7. Id. at 9.
8. Id. at 10.
9. Id. at 10-11 (citations omitted). 
10. We granted the State's nine grounds for review, which are as follows:


1. Can the Court of Appeals reverse and remand for a hearing on the issue of indigency
on the basis that the trial judge abused his discretion in failing to conduct a hearing on
defendant's motion for a free record when the record affirmatively shows that a hearing
was conducted by the trial judge and the trial court refused to grant the defendant a free
record?


2. Is it an abuse of discretion for the trial court to refuse to find a defendant indigent
where the affidavit filed by the defendant show [sic] that she and her husband have an
annual income of over $48,800.00, cash and bank accounts in the amount of
$5,681.00, investments of $1,664.00, and automobiles valued at $6,800.00


3. Is there a legal distinction between insolvency and indigency?


4. Is a person indigent within the meaning of Texas Code of Criminal Procedure
Annotated, Art. 1.051 where they apparently have unencumbered assets of over
$14,000.00 and an annual income of over $48,000.00 merely because they list debts
and obligations which exceed the value of their assets?


5. Does a trial judge abuse his discretion in refusing to find a person indigent who has
sufficient amount of unencumbered assets to hire an attorney and to pay for a record
merely because that person has other debts which may make them insolvent?


6. Does a trial judge abuse his discretion in refusing to find that a defendant is indigent
where the defendant has assets which can be used to hire an attorney and pay for a
record and where that person presents no evidence that they have no credit or
insufficient credit to borrow funds to pay for an attorney and to pay for a record?


7. Does a trial judge abuse his discretion in refusing to grant the motion to withdraw by
an attorney who was hired by a defendant during trial, where that attorney presents no
evidence to show that his employment was not to include the handling of any appeal?


8. Does a trial judge abuse his discretion in refusing to allow an attorney retained by a
defendant during the trial to withdraw on appeal because of the attorney's claim that he
is not competent to handle the appeal?


9. Where the trial court refuses to allow an attorney retained by the defendant during
the trail to withdraw on appeal, does such action by the trial court in effect constitute an
appointment of the attorney as appellate counsel if the defendant is found to be
indigent? 
11. Janecka v. State, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996), cert. denied, 522 U.S.
825 (1997).
12. Moore v. State, 999 S.W.2d 385, 398 (Tex. Crim. App. 1999), cert. denied, 530 U.S.
1216 (2000).
13. See TEX. R. APP. P. 34.5(c), 34.6(d).
14. Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); Williams v. State, 937
S.W.2d 479, 487 (Tex. Crim. App. 1996).
15. Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).
16. Hicks v. State, 75 Tex. Crim. 461, 482-483, 171 S.W. 755, 765-766 (1914); Reyes v.
State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); Wallace v. State, 106 S.W.3d 103, 108 (Tex.
Crim. App. 2003).
17. See Hicks and Reyes, supra.
18. Johnson v. State, 650 S.W.2d 784, 790 (Tex. Crim. App. 1983).
19. McManners v. State, 592 S.W.2d 622, 623 (Tex. Crim. App. 1980).
20. Williams v. State, 493 S.W.2d 863, 865 (Tex. Crim. App. 1973).
21. Id.
22. Worton v. State, 492 S.W.2d 519, 520 (Tex. Crim. App. 1973).
23. Patton v. State, 489 S.W.2d 906, 906 (Tex. Crim. App. 1973).
24. Rollins v. State, 488 S.W.2d 429, 429 (Tex. Crim. App. 1972).
25. Watson v. State, 466 S.W.2d 783, 785 (Tex. Crim. App. 1971).
26. Hardin v. State, 452 S.W.2d 156, 156 (Tex. Crim. App. 1970)(motion to disqualify trial
judge).
27. Bishop v. State, 85 S.W.3d 819, 821-822 (Tex. Crim. App. 2002).
28. Id. at 822.
29. Article 26.04, passim.
30. Article 26.04(n) provides:


A defendant who requests a determination of indigency and appointment of counsel
shall:


(1) complete under oath a questionnaire concerning his financial resources;


(2) respond under oath to an examination regarding his financial resources by the judge
or magistrate responsible for determining whether the defendant is indigent; or 


(3) complete the questionnaire and respond to examination by the judge or magistrate.
31. Article 26.04(o) provides:


Before making a determination whether a defendant is indigent, the court shall request
the defendant to sign under oath a statement substantially in the following form:

"On this ________ day of ___________, 20__, I have been advised by the (name of
the court) Court of my right to representation by counsel in the trial of the charge
pending against me. I am without means to employ counsel of my own choosing and I
hereby request the court to appoint counsel for me. (signature of the defendant)"
32. Rule 20.2 (emphasis added). The rule provides in its entirety:


Within the time for perfecting the appeal, an appellant who is unable to pay for the
appellate record may, by motion and affidavit, ask the trial court to have the appellate
record furnished without charge. If after hearing the motion the court finds that the
appellant cannot pay or give security for the appellate record, the court must order the
reporter to transcribe the proceedings. When the court certifies that the appellate
record has been furnished to the appellant, the reporter must be paid from the general
funds of the county in which the offense was committed, in the amount set by the trial
court.
33. Id., passim.
34. The notice of appeal was filed on February 12, the clerk's record of the indigence hearing
was mailed on February 22, and the Court of Appeals file-stamped the record on February 25. We
have previously held that the filing of a notice of appeal divests the trial court of general jurisdiction. 
Ramirez v. State, 104 S.W.3d 549, 550 (Tex. Crim. App. 2003); Lopez v. State, 18 S.W.3d 637,
639 (Tex. Crim. App. 2000). However, Rule 25.2(g) states that further proceedings in the trial court
(unless otherwise provided by law or the appellate rules) are suspended "[o]nce the record has been
filed in the appellate court." See also Green v. State, 906 S.W.2d 937, 939 (Tex. Crim. App. 1995). 
At this juncture, we need not resolve any potential conflict between our cases and the rule, or any
ambiguity within the rule, concerning the exact moment the trial court loses jurisdiction.
35. Gray v. Robinson, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988).
36. Snoke v. State, 780 S.W.2d 210, 213 (Tex. Crim. App. 1989).
37. Id. (specifically, to protect the effective assistance of counsel on appeal).
38. Id. at 213-214; Abdnor v. State, 712 S.W.2d 136, 141-144 (Tex. Crim. App. 1986).
39. Snoke, 780 S.W.2d at 210; see also Sifford v. State, 511 S.W.2d 526, 527 (Tex. Crim.
App. 1974)(upholding trial court's conclusion that defendant was not indigent for purposes of
appointing counsel because there was "evidence in the record to support that finding").
40. 32 S.W.3d 853 (Tex. Crim. App. 2000).
41. Id. at 858.
42. Although the evidence was submitted here by affidavit, rather than live testimony, that fact
would not by itself negate the trial court's discretion under Ross to disbelieve witnesses. See Manzi v.
State, 88 S.W.3d 240, 243-244 (Tex. Crim. App. 2002).
43. See Snoke, 780 S.W.2d at 212.
44. See Id. at 214 (defendant's showing of indigence "has not been substantively undermined by
the State").
45. See the Texas Task Force on Indigent Defense' model affidavits of indigency. 
Http://www.courts.state.tx.us/tfid/Affidavits%20of%20Indigency%20Introduction.htm
46. Article 26.04(l).
47. Article 26.04(m).
48. Article 26.04(n).
49. See Article 26.04, generally.
50. Article 26.04(p); Snoke, 780 S.W.2d at 214.
51. Article 26.05(g).
52. This is arguably the same standard often applied to recantations occurring immediately after
trial. See Keeter v. State, 74 S.W.3d 31, 37-38 (Tex. Crim. App. 2002). While we express no
opinion concerning the suitability of that standard to the recantation context, the standard does seem
suited to the indigence context.
53. Abdnor, 712 S.W.2d at 140-141.
54. Marin v. State, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).
55. Swenson v. Bosler, 386 U.S. 258, 259 (1967)(no request necessary to be entitled to
counsel on appeal). 
56. Arguably, appellant forfeited any complaint about the manner of conducting the hearing by
failing to object to it. But since the right to counsel is a waivable-only right, there may be a question
about whether error can be forfeited at a hearing designed to determine whether a defendant is entitled
to a waivable-only right. 
57. Article 26.04(p) (authorizing a motion for reconsideration if "there is a material change in
financial circumstances after a determination of indigency or non-indigency is made."
)
58. Abdnor, 712 S.W.2d at 144; Snoke, 780 S.W.2d at 214.
59. Article 26.04(o).
60. Rule 20.2.
61. 595 S.W.2d 552, 554 (Tex. Crim. App. 1980).
62. See Goffney v. Lowry, 554 S.W.2d 157, 159 (Tex. 1977)(citing and quoting Pinchback
v. Hockless, 139 Tex. 536, 164 S.W.2d 19, 20 (Tex. 1942).
63. Id.
64. Rowland v. Calif. Men's Colony, 506 U.S. 194, 206 (1993)
65. Jones v. State, 98 S.W.3d 700, 703 (Tex. Crim. App. 2003).
66. Id. (internal quotation marks omitted).
67. See Rules 6.1 - 6.6.
68. Ex Parte Axel, 757 S.W.2d 369, 373-374 (Tex. Crim. App. 1988).
69. Id. ("But it was not then, and is not now, required that written notice of appeal be made by
trial counsel, and thus "volunteer" to become attorney of record on appeal"; holding that a pro se notice
of appeal combined with a motion to withdraw places the trial court on notice that the defendant, if
indigent, needs appointed counsel, unless another attorney has already been retained).
70. Id. at 374 n. 7 ("the judge may require withdrawing trial counsel to continue to serve through
such indigency proceeding, and withhold signing an order granting leave to withdraw until that bit of
business is done").
71. See Rule 35.2(b).