**AFFIRMED; Opinion Filed March 13, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00243-CR

**STEVEN LYNN JONES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82891-2011**

## OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Myers

A jury convicted appellant Steven Lynn Jones of arson and assessed punishment at seven years in prison. In two issues, appellant argues the trial court erred by denying his request for a free reporter's record. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

Jones was charged by an indictment with the offense of arson. Following his conviction by a jury and the imposition of a seven-year prison sentence on February 11, 2014, Jones timely filed his notice of appeal from the conviction and sentence on February 27, 2014. Thereafter, on April 14, 2014, he filed a request for an appellate record, and an affidavit in support of his request, seeking the preparation of the reporter's record of his trial at no cost to him for use in the appeal of his conviction and sentence. On April 28, 2014, a hearing was held on the request, at the conclusion of which the trial court stated: "Mr. Jones, you're not indigent. Your request to

have the taxpayers of this county pay for an appellate record is denied and overruled." The following day, April 29, Jones requested via letter that the trial court enter findings of fact and conclusions of law. On May 29, 2014, the trial court signed its findings of fact and conclusions of law.

The trial court found, among other things, that "[t]he cost of the reporter's record would be approximately $7,000"; that Jones's affidavit contained information that was "inaccurate, misleading, and false on the date the affidavit was signed," i.e., "[t]he affidavit claimed the defendant was currently incarcerated, when he was not," and "[t]he affidavit claimed that the defendant was unable to make $50,000 bail, when in fact he was out on bail"; that Jones's testimony "was inconsistent with the contents of the affidavit"; that "[b]ased on the defendant's testimony and other testimony in the record, the defendant's affidavit in support of request for [an] appellate record lacks credibility"; and that "[t]he affidavit was filed after the time period permitted" by rule 20.02 of the Texas Rules of Appellate Procedure. The court concluded as follows: (1) "The defendant's request for a free appellate record was untimely"; (2) "[t]he defendant did not make a *prima facie* showing of indigency"; and (3) "[t]he defendant is not indigent for purposes of his appeal."

## DISCUSSION

Jones advances two issues in this appeal, arguing that (1) the trial court erred to the extent it denied appellant's request for a free reporter's record of his trial because Jones failed to timely file the motion and affidavit in support of his request for a free reporter's record; and (2) the trial court erred by finding that Jones did not make a prima facie showing of indigence, that he is not indigent for purposes of this appeal, and that appellant is not entitled to a free reporter's record of his trial. Because these issues are related, we address them together.

Texas Rule of Appellate Procedure 20.2 provides that "an appellant who is unable to pay

for the appellate record may, by motion or affidavit, ask the trial court to have the appellate record furnished without charge." TEX. R. APP. P. 20.2. "If after hearing the motion the court finds that the appellant cannot pay or give security for the appellate record, the court must order the reporter to transcribe the proceedings." *Id*. The rule, however, also specifies that the request to have the appellate record furnished without charge must be made "within the time for perfecting the appeal." *Id*. The time a criminal defendant has to perfect an appeal is specified under rule of appellate procedure 26.2 as within 30 days after the day the sentence is imposed or suspended in open court, or after the day the trial court enters an appealable order; or within 90 days after the day sentence is imposed or suspended in open court if the defendant timely files a motion for new trial. TEX. R. APP. P. 26.2(a).

Factors relevant to an indigence determination include the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, spousal income available to the defendant, and the ability to post bail insofar as that ability reflects the defendant's financial circumstances as measured by the other factors. *McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010); *Whitehead v. State*, 130 S.W.3d 866, 878 (Tex. Crim. App. 2004). The trial court may also consider a defendant's ability to borrow money as the court determines how the defendant's assets and property relate to the ability to pay, but a defendant should not be required to borrow money that can never be repaid without depriving him of the necessities of life. *See Whitehead*, 130 S.W.3d at 878; *but see Abdnor v. State*, 712 S.W.2d 136, 142 (Tex. Crim. App. 2007) (outside sources such as relatives or even employers may not be considered unless they are legally bound to pay for the defendant's appellate expenses). The expense involved in hiring counsel and paying for the appellate record is also a valid consideration. *Whitehead*, 130 S.W.3d at 878.

The trial court determines indigence on a case-by-case basis as of the time the issue is

raised and not as of some prior or future time. *See id*. at 874 (quoting *Gray v. Robinson*, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988) (en banc)). The trial court follows a two-step process to determine the issue of indigence: (1) the defendant must make a prima facie showing of indigence, and (2) once the defendant makes a prima facie showing of indigence, the burden shifts to the State to show that the defendant is, in fact, not indigent. *See id*. (citing *Snoke v. State*, 780 S.W.2d 210, 213 (Tex. Crim. App. 1989) (per curiam)). In deciding whether the defendant has made a prima facie showing of indigence, "the trial court does not have the nearly unfettered discretion seen in other contexts to simply disbelieve the defendant's evidence of indigence." *Id*. at 875. Instead, the court may disbelieve a defendant's allegation of indigence only if there is a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the evidence submitted is in some manner suspect or inadequate. *See id*. at 876.

The trial court's indigence determination is reviewed on appeal for an abuse of discretion. *See Newman v. State*, 937 S.W.2d 1, 3 (Tex. Crim. App. 1996). After a defendant establishes a prima facie showing of indigence, an appellate court will uphold a determination that the defendant is not indigent only if the record contains evidence supporting such a determination. *McFatridge*, 309 S.W.3d at 6. The trial court is not completely free to disbelieve the defendant's assertions concerning his financial status, but it may disbelieve the defendant's assertions "if there is a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the evidence submitted is in some manner suspect or determined by the court to be inadequate." *Whitehead*, 130 S.W.3d at 876.

As the reviewing court, it is not our role to determine whether the appellant is indigent for purposes of appeal. *See McFatridge*, 309 S.W.3d at 9. Rather, we must determine if the evidence produced at the indigence hearing supports the trial court's non-indigence

–4–

determination. *See id*. Moreover, as the reviewing appellate court, we may not consider facts that were not developed in the record. *Id*. at 6.

In this case, Jones did not file a motion for new trial; thus, he had to perfect his appeal within 30 days after February 11, 2014, the day his sentence was imposed. TEX. R. APP. P. 26.2(a). The deadline, therefore, for requesting a free reporter's record was March 13, 2014. TEX. R. APP. P. 20.2. Jones, however, did not file his motion and supporting affidavit until April 14, 2014. "To obtain a free record, the defendant must exercise due diligence in asserting his indigence and must sustain his allegations at the hearing." *Whitehead*, 130 S.W.3d at 876. Due diligence requires that an appellant timely file the affidavit attesting to his indigence. *See Snoke v. State*, 780 S.W.2d 210, 212–13 (Tex. Crim. App. 1989) ("In order to obtain a statement of facts free of charge, a defendant claiming indigency status must first exercise due diligence in asserting his indigency, including timely filing his affidavit, and second, he must sustain the allegations of his affidavit as to indigency at the hearing."); *Gray v. State*, 928 S.W.2d 561, 562 (Tex. Crim. App. 1996) ("As we made unmistakably clear in *Abdnor*, an appellant who timely filed his indigency affidavit had exercised the requisite 'due diligence.'"); *Abdnor*, 712 S.W.2d at 141 ("It is well established that due diligence requires an appellant to timely file a pauper's oath in order to secure a free statement of facts."); *see also Curlin v. State*, 881 S.W.2d 513, 515 (Tex. App.—Dallas 1994, no pet.). Thus, the record supports the trial court's conclusion that Jones's request for a free appellate record was untimely, and the trial court could have denied Jones's motion based on his failure to exercise due diligence in asserting his indigence. *See Whitehead*, 130 S.W.3d at 876–77.

Furthermore, even if we assume Jones exercised due diligence in asserting his indigence, the record supports the trial court's conclusion that appellant did not make a prima facie showing of indigence. We begin with the affidavit filed by Jones, which reads in part as follows:

–5–

My name is Steven Lynn Jones. I am the defendant/appellant in *State v. Steven Lynn Jones*, No. 401–82891–2011, wherein I was convicted of arson and sentenced to seven (7) years['] confinement.

I am currently incarcerated in that case serving my sentence. Bail has been set in the case at $50,000.00, which I am unable to make.

I have been advised the cost to him [sic] for preparing the reporter's records of the trial proceedings in this case, which I am told are essential to an appellate review of the conviction and sentence in this case, will exceed $7,000.00.

I have between $500.00 and $1,000.00 available to me. I do not have funds or property with which to pay or give security for the payment of the cost of preparing the reporters['] records in this case, based on the estimate provided to me for the preparation of those records. I do not have the ability to borrow any funds with which to pay the cost of the preparation of the court reporters['] records in this case.

At the April 28, 2014 hearing on his request, Jones, by that time out of jail pursuant to an appeal bond, testified that he had no savings or property. He received $1,500 per month in Social Security benefits and, for another one or two months, would receive $1,800 per month from the sale of his bakery. His monthly expenses for rent, food, gas, and utilities totaled approximately $1,500, of which Jones paid approximately $1,400 per month in rent to his daughter, who owned the house where he lived. Jones testified that he did not think his daughter could reduce his rent because the rent equaled her monthly payment, but he never asked her to reduce the rent. Jones owned a 2011 Toyota Camry that had a $14,000 lien and for which he was paying approximately $260 per month. He owned a Seiko watch valued at "[m]aybe a hundred [dollars]." He spent approximately $30 per month for internet access and $150 for cigarettes. He had no dependents he was supporting. He was unemployed and believed that, at his age, he had no realistic prospects for employment in the near future, having been "turned down everywhere I've applied." Jones testified that he had visited a casino the night before, but he maintained that he merely "drove my ex-wife up there and drove back"; he did not gamble. He testified that he had not filed a federal income tax return for 2013 because he did not earn

sufficient funds to require the filing of the return. He testified that his attorney on appeal was hired for him by his daughter and that his former wife paid for his bond pending appeal.

Jones's counsel testified at the April 2014 hearing that he was retained by Jones's daughter to represent her father, and that, shortly after being retained, he contacted the court reporter and obtained an estimate for the cost of the reporter's record, which was "going to be in excess of $7,000." Counsel testified that he sent a letter to Jones's daughter in March, and copied Jones, notifying her of the cost of the record and asking her to contact him, but he "never did hear back from her."[1] Counsel added that he "discussed the matter" with Jones during the hearing on Jones's request for an appeal bond, which, according to the trial court's docket sheet, occurred on March 21, 2014. Jones indicated that he believed his daughter did not "have any money to speak of to pay for the record," that he "certainly did not," and the conclusion counsel reached "was that it would be necessary to file the affidavit."

Jones's testimony at the hearing conflicted with some of the statements in his affidavit, and the affidavit omitted various income and property. In his affidavit, Jones stated that he had "between $500.00 and $1,000.00 available to me." But during the hearing, Jones testified, "I've got nothing" and "I've got no savings, no property." The affidavit did not mention that, excluding the cash on hand, Jones's $1,500 monthly social security benefits and the $1,800 per month from the sale of his business gave him an income of approximately $3,300 per month. Appellant testified that the $1,800 would be paid to him for another one or two months, but there is no additional evidence in the record regarding the sale of the business or precisely how long those payments would continue. Jones's affidavit also failed to mention the 2011 Toyota Camry, and there was no evidence in the record regarding the value of the vehicle or whether Jones

---

[1] Jones alleged in his brief that counsel wrote the letter to his daughter on March 11, 2014, but neither the date of the letter nor its contents is in the record.

attempted to sell it. *See Taylor v. State*, 799 S.W.2d 445, 447 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (appellant had an automobile, a pendant, and a chain, but record did not show the value of these items, there was no testimony regarding any attempts to sell them, and appellant offered no testimony as to the value of the automobile or whether the car's value was greater than any amount owed on it).

Additionally, the record shows appellant had monthly income that was available for at least a partial payment towards the cost of the reporter's record. Excluding the cash on hand mentioned in the affidavit, and adding up all of appellant's stated monthly income and expenses, he would have had approximately $1,360 per month, and possibly more, available to him.[2] And assuming the $1,800 payments continued for two months, appellant, according to his testimony, would have had, excluding cash on hand, over $2,700 to pay towards the cost of the reporter's record. Further, there is no evidence that the approximate $7,000 cost for the preparation of the reporter's record had to be paid for in advance. *See Whitehead*, 130 S.W.3d at 879 (noting that "appellant failed to introduce before the trial court competent evidence of the cost of the record or that the record would have to be paid for in advance"); *Hornsby v. State*, 65 S.W.3d 801, 803–04 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("[T]he judge could have concluded appellant had at least $200 per month, and possibly $300 per month, available after expenses to use to pay for the record. Appellant did not state that she had ever requested a payment schedule from the court reporter, an option that may have allowed her to pay for the record."). Moreover, the trial court could have reasonably believed that appellant's summary of expenses included unnecessary items. *See Whitehead*, 130 S.W.3d at 879.

When we examine the record in this case in its entirety, we cannot say the trial court was

---

[2] The calculation is as follows: $3,300 in monthly income minus $1,400 for rent, $100 for food, gas and utilities (reflecting appellant's stated estimate of $1,500 per month for rent, food, gas, and utilities), $30 for internet access, $150 for cigarettes, and a $260 car payment, leaves a net monthly income of $1,360.

unreasonable in finding appellant did not make a prima facie showing that he was indigent. While the court does not have "the nearly unfettered discretion" to simply disbelieve Jones's evidence, here, the record contains reasonable and articulable bases for disbelieving Jones's claim of indigence and for determining that he failed to make a prima facie showing of indigence. *See id.* at 875–76. The trial court articulated those bases in its findings of fact and conclusions of law. The record supports the court's finding that appellant's testimony was inconsistent with the contents of the affidavit. In addition, as the court stated in its findings, appellant's affidavit incorrectly stated that appellant was in jail and unable to make bond. We therefore conclude that the evidence supports the trial court's determination that appellant did not make a prima facie showing of indigence. Based on the record before us, the trial court did not abuse its discretion by denying appellant's request for a free reporter's record on appeal.

Jones also argues that we should reverse the trial court's decision because the failure to timely file the rule 20.2 motion and affidavit was due to the ineffective assistance of counsel. Under normal circumstances, however, the record on direct appeal will not be sufficient to demonstrate that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). The present case is no different. Jones's counsel did not specifically discuss the deadline for requesting a free reporter's record, but his testimony at the April 2014 hearing suggests that the March 21, 2014 bond hearing was the first time he had any actual notice Jones might be indigent. It is also possible that counsel may have believed, prior to the bond hearing, that since Jones was represented by retained counsel, he would not be able to meet the evidentiary showing required to establish that he was indigent. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(b) (defining "indigent" person as one "not financially able to employ counsel"); *Easily v. State*, 248 S.W.3d

272, 279–80 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).  Without a more complete record, we simply cannot conclude counsel provided ineffective assistance.  *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  We overrule appellant's first and second issues.

### CONCLUSION

Because we conclude the trial court did not abuse its discretion by denying Jones's request for a free reporter's record, and because Jones neither raises nor identifies any issues relating to his conviction and sentence, we affirm the judgment of conviction.


<u>/ Lana Myers/</u>
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
140243F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN LYNN JONES, Appellant

No. 05-14-00243-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-82891-2011.
Opinion delivered by Justice Myers. Justices Bridges and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 13th day of March, 2015.