**Melanie Denise McFATRIDGE,**
**Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–08–00049–CR.**

Court of Appeals of Texas,
Waco.

Sept. 3, 2008.

Melanie Denise McFatridge, Blooming Grove, pro se.

R. Lowell Thompson, Navarro County Crim. Dist. Atty., Corsicana, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## ORDER

PER CURIAM.

In this Order, we address Melanie Denise McFatridge's appeal of the trial court's determination that she is not indigent for purposes of appeal. We will affirm the court's determination and reset the appellate timetable.

### Background

McFatridge filed a sworn motion for a free reporter's record. This motion was supported by an affidavit of indigency which incorporated an exhibit in which McFatridge asserted that she has monthly gross income of $550, and monthly expenses of $484.

McFatridge stated in her affidavit, "I do not have knowledge of any other source from which I can obtain funds to obtain the services of counsel." She did not, however, identify any assets that she owns or the extent to which such assets may be encumbered. Her first witness, Bill Smith, testified that they had executed a contract for deed in June 1997 for a house located on Cemetery Road for which McFatridge was paying $200 per month. He maintained that he is the owner of this property and will remain so until she satisfies the contract. Smith also indicated that McFatridge has been experiencing unspecified "financial problems" though he could not elaborate on them, other than to say "she had a lot of trouble with child support."

The next witness testified that McFatridge was unable to have electric service connected at her house in her own name, so the electric bill is in his name.[1] Although counsel asked whether this was "for credit reasons," the witness responded that he did not know.

Following the practice employed in civil appeals, the court reporter challenged McFatridge's indigence claim by filing a contest. See TEX.R.APP. P. 20.1(e). McFatridge objected when the State sought to introduce the court reporter's testimony[2] on the basis that such testimony would violate the reporter's professional obligations to "be fair and impartial towards each participant." The trial court implicitly overruled this objection by permitting the reporter to testify. Id. 33.1(a)(2)(A).

The court reporter testified that McFatridge had approached her during a trial recess to discuss preparation of the reporter's record for appeal. The reporter told her that the cost of the record would be about $3,000. McFatridge then offered to give the reporter $3,000 in antiques for preparation of the record. The reporter declined the offer. During cross-examination, McFatridge's counsel suggested that the reporter was violating her duty of confidentiality by offering this testimony. The court sustained the State's objection to this line of cross-examination.

Next, the State offered in evidence records from the tax appraisal district reflecting that McFatridge owns two tracts of real property, including the one for which she allegedly executed the contract for deed with Smith, shown by these records to be located on Rose Hill Lane. According to the appraisal district records, the Rose Hill Lane property has a market value of

---

1. The address on the bill is for Rose Hill Street, but the witness explained that the street is also known as Rose Hill Cemetery Road because there is a cemetery there.

2. A different court reporter made a record of the indigence hearing.

$35,270, and the other tract has a market value of $6,670.[3]

McFatridge argued that the records regarding the Rose Hill Lane property are incorrect because Smith testified that he still owns that property. In response, the State referred to an application for homestead exemption McFatridge filed with the appraisal district in 2000 in which she stated that she owned this property.

McFatridge also responded that she had sold the second tract of property shown in the appraisal district records. She explained that she had executed a contract for deed with another family who had stopped making their payments and were now in adverse possession of the property. The State countered by offering in evidence as State's Exhibit No. 3 a "warranty deed" purportedly showing that McFatridge owned this other property. However, this deed was never admitted and is not included in the record.

McFatridge claimed that she had filed an eviction proceeding against the occupants of this other property in justice court but the justice of the peace dismissed the case less than two weeks after it was filed because it was a dispute over title rather than possession. The court granted McFatridge a two-day continuance to gather documentary evidence to support her claim.

On the final day of the indigence hearing, the State presented the testimony of an appraisal district employee who confirmed that McFatridge was the owner of both pieces of property according to the appraisal district's records. He conceded on cross-examination that he had no knowledge of whether there were any liens against the property for debts she owed. He also conceded that Smith could still be the title holder of the Rose Hill Lane property even though the appraisal district records showed otherwise.

McFatridge concluded by offering in evidence (1) a 1993 warranty deed reflecting a conveyance of the Rose Hill Lane property to Smith and his wife and (2) justice court records from August 2000 supporting her statements regarding the eviction proceeding.

After hearing argument of counsel, the court ruled that McFatridge is not indigent. The court later prepared findings of fact and conclusions of law to support its ruling. In particular, the court found: (1) based on McFatridge's 2006 income tax return, her annual income exceeds the federal poverty limit; and (2) she owns non-exempt assets worth $9,670 ($3,000 in antiques and the second tract of property). Thus, the court concluded that McFatridge could employ these non-exempt assets to obtain suitable appellate representation and to pay for the record.

## Applicable Law

■ There are two separate indigence inquiries at issue: (1) whether McFatridge is indigent for the purpose of obtaining a free appellate record; and (2) whether she is indigent for the purpose of obtaining court-appointed counsel. *See Whitehead v. State*, 130 S.W.3d 866, 876–78 (Tex.Crim. App.2004). Article 26.04 of the Code of Criminal Procedure governs the appointment of counsel and provides a list of statutory factors to be considered in determining whether a defendant is indigent.

---

3. The appraisal district records also contain abbreviations for the types of conveyances by which title was acquired for these properties. The records indicated that the Rose Hill Lane property was conveyed by a "D–CS" in McFatridge's favor on June 25, 1997 and the other property was conveyed to her by a "D–GWD" dated August 22, 2002. There is no evidence in the record explaining these abbreviations.

*See* Tex.Code Crim. Proc. Ann. art. 26.04 (Vernon Supp.2008).

In determining whether a defendant is indigent, the court or the courts' designee may consider the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant. The court or the courts' designee may not consider whether the defendant has posted or is capable of posting bail, except to the extent that it reflects the defendant's financial circumstances as measured by the considerations listed in this subsection.

*Id.* art. 26.04(m). These factors are relevant to both indigence inquiries. *Whitehead,* 130 S.W.3d at 878.

■■■■ "The indigency determination is made on a case-by-case basis as of the time the issue is raised and not as of some prior or future time." *Id.* at 874 (quoting *Gray v. Robinson,* 744 S.W.2d 604, 607 (Tex.Crim.App.1988) (orig.proceeding)). A two-step process applies to the indigence determination: "(1) the defendant must make a *prima facie* showing of indigence, and (2) when the *prima facie* showing is made, the burden shifts to the State to show that the defendant is not in fact indigent." *Id.*

■■■ We show some deference to a trial court's factual determinations regarding a defendant's indigence, but a trial court is not at liberty to disbelieve a defendant's allegations concerning his own financial status unless the court has "a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the evidence submitted is in some manner suspect or determined by the court to be inadequate." *Id.* at 876.

■■■ As with other appellate proceedings, this Court may not consider factual assertions which are outside the record. *Id.* at 872. Our review is limited to: (1) sworn pleadings and affidavits on file at the time of the trial court's indigence determination, and (2) sworn testimony and exhibits admitted during the indigence hearing, if any. *Id.* at 872–74.

### Propriety of Court Reporter's Testimony

■■■ McFatridge raised two objections to the court reporter's testimony. She argued that such testimony violated the court reporter's obligation to be fair and impartial and her duty of confidentiality.

The basis for McFatridge's first objection is found in Rule 10 of the Code of Professional Conduct for Certified Shorthand Reporters and Court Reporting Firms which is entitled "Avoid Conflicts of Interest." Code of Prof'l Conduct for Cert. Shorthand Reporters & Ct. Reporting Firms 10 (West 2008). The rule provides in pertinent part, "A [court reporter] shall be fair and impartial toward each participant in a legal proceeding." *Id.*

■■■ The court did not abuse its discretion by overruling this objection. When as here a court reporter is privy to relevant factual information regarding a party's indigence claim, the reporter may testify about that information. This only makes sense in light of Rule of Appellate Procedure 20.1(e) which specifically authorizes a court reporter to challenge a civil litigant's indigence claim. *See* Tex. R.App. P. 20.1(e). Rather, the court reporter's obligation to be "fair and impartial toward each participant" is directed toward the reporter's duties in reporting a particular hearing or trial in an unbiased fashion.

During cross-examination, McFatridge suggested that the reporter was violating

her duty of confidentiality by testifying about McFatridge's oral statements regarding the antiques. *See* Code of Prof'l Conduct for Cert. Shorthand Reporters & Ct. Reporting Firms 8.[4] The court sustained the State's objection to this line of cross-examination. The court stated that it did not believe that the duty of confidentiality applies to the conversation at issue. We agree.

Accordingly, we cannot say that the court abused its discretion by permitting the court reporter to testify.

### Indigence Claim

█ McFatridge made a *prima facie* showing of indigence with her sworn motion and supporting affidavit. However, at the indigence hearing she did not testify although her attorney [5] offered some documentary exhibits in evidence in an effort to refute the State's evidence.[6]

The court based its finding regarding McFatridge's income on her 2006 federal income tax return in which she claimed gross business income of $10,905 (and net profit of $5,990). McFatridge offered no evidence to explain how or why her income in 2008 is less than it was two years earlier.

The court found that she owns non-exempt assets with a market value of $9,670. *See* Tex.Code Crim. Proc. Ann. art. 26.04(m) (authorizing court to consider "property owned" by defendant); *see also Whitehead,* 130 S.W.3d at 878. She offered no evidence to refute the court reporter's testimony that she offered to pay for the record with $3,000 worth of antiques. The court heard conflicting evidence regarding her ownership of the property shown by appraisal district records to be worth $6,670. Although McFatridge offered documentary evidence supporting her claim that others are occupying that property, the appraisal district records reflect that the property was conveyed to McFatridge in 2002, two years after the eviction proceedings were dismissed.

The court's findings are supported by the evidence. Accordingly, we cannot say that the court abused its discretion by finding that McFatridge is not indigent.

### Conclusion

█ McFatridge should not be penalized for exercising her right to appellate review of the court's indigence determination. *See Nelson v. State,* 6 S.W.3d 722, 725 (Tex.App.-Waco 1999, order, no pet.), *overruled on other grounds by Duncan v. State,* 158 S.W.3d 606, 607 (Tex.App.-Waco 2005, order) (per curiam), *appeal dism'd,* 220 S.W.3d 131 (Tex.App.-Waco 2007, pet. ref'd).[7] Therefore, the clerk's record and

---

4. Rule 8 provides, "A [court reporter] shall preserve the confidentiality and ensure the security of information, oral or written, entrusted to [the reporter] by any of the parties in a proceeding." Code of Prof'l Conduct for Cert. Shorthand Reporters & Ct. Reporting Firms 8 (West 2008).

5. McFatridge had court-appointed counsel for trial, and it appears that the court appointed other counsel to represent her on appeal. However, her appointed appellate counsel was permitted to withdraw after the court determined that McFatridge was not indigent. McFatridge currently represents herself.

6. The court conducted the indigence hearing over three days, apparently interspersed with hearings in other cases. From the reporter's record, it is not even clear that McFatridge attended each phase of the indigence hearing. The record does reflect that she was present on the second day, however.

7. *Duncan* overruled *Nelson* to the extent that it stood for the proposition that an indigence appeal like McFatridge's should be docketed under a separate cause number. *Duncan v. State,* 158 S.W.3d 606, 607 (Tex.App.-Waco 2005, order) (per curiam), *appeal dism'd,* 220 S.W.3d 131 (Tex.App.-Waco 2007, pet. ref'd).

the reporter's record are due within thirty days after the date of this Order. *Id.* Within that time period, McFatridge must also pay the clerk's and reporter's fees for preparation of these records or make payment arrangements. *See* TEX.R.APP. P. 35.3(a)(2), (b)(3). The appellant's brief will be due within thirty days after the record has been filed, and the State's brief will be due within thirty days after the appellant's brief is filed. *Id.* 38.6.

It is so ordered.

(Chief Justice GRAY dissenting with note).*

* ("Chief Justice Gray does not join the Court's discussion of the indigence determination and dissents from its conclusion related thereto. He notes, however, that ownership of property does not equate to the present ability to pay or make arrangements to pay for a record or legal services. A separate order on these issues will not issue.")