

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-1494-08

**MELANIE D. McFATRIDGE, Appellant**

v.

**THE STATE OF TEXAS**

ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE TENTH COURT OF APPEALS
NAVARRO COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, KEASLER, HERVEY and HOLCOMB, JJ., joined. MEYERS, J., filed a concurring opinion. COCHRAN, J., dissented.

## O P I N I O N

We granted the appellant's petition for discretionary review in this cause to examine the court of appeals's holding that the trial court did not abuse its discretion in finding that the appellant was not indigent for purposes of obtaining a free record and the assistance of counsel for appeal. Because we believe that the trial court's decision is reasonably supported by the record, we find no abuse of discretion and affirm the judgment of the court of appeals.

## FACTS AND PROCEDURAL POSTURE

In January of 2008, the trial court found the appellant, who was represented by appointed counsel, guilty of driving while intoxicated. The appellant gave timely notice of appeal and filed a sworn statement of indigency requesting that the trial court appoint her counsel for appeal. She also filed a motion for a free court reporter's record. In her sworn statement of indigency, the appellant listed her monthly income as $550, and her monthly "general expenses" as $484.[1] Utilizing a mechanism that is available in civil appeals, the court reporter from the DWI trial subsequently filed a "Contest of Affidavit of Inability to Pay Costs" in which she challenged the appellant's claim of indigency.[2] To support her contest, the court reporter relied on a conversation she had with the appellant during the DWI trial, wherein the appellant offered to trade antiques for a copy of the record, which the court reporter estimated would cost $3,000. The court reporter declined the appellant's offer.

Over the course of three days in late February of 2008, the trial court held a hearing to determine whether the appellant was indigent. The appellant did not testify at the hearing.

---

[1] Although she listed the $550 as "Gross Wage and Salary Income," the appellant did not list any deductions normally attendant to this category of income, such as income tax, social security, or health insurance, nor did she attach a pay stub. The record suggests that the appellant was actually self-employed, buying, restoring, and selling antiques. Nevertheless, she listed nothing under the heading, "Self-Employment Income." Additionally, although the appellant attached a handful of receipts to her statement, those receipts do not add up to the $484 worth of "general expenses" that she claimed in her sworn statement of indigency.

[2] See TEX. R. APP. P. 20.1(e) (". . . the court reporter . . . may challenge the claim of indigence by filing—in the court in which the affidavit [of indigency] was filed—a contest to the affidavit.").

Instead, she called her landlord as a witness, who testified that the appellant paid $200 a month for rent. The appellant also attempted to show that, because of her bad credit, she could not establish accounts in her own name, presenting a witness who testified that the appellant's electricity bill was in his name. When pressed, however, this witness was unable to say why the appellant could not have the account in her own name. The appellant also offered into evidence receipts of her monthly expenses.[3]

The State countered with evidence of the appellant's assets.[4] It presented testimony from the court reporter about the appellant's offer at trial to barter antiques, arguing that these antiques should be considered an asset of the appellant. The State later called an employee from the Navarro County Appraisal District to testify that the appellant was listed in the county records as the owner of two pieces of real property—the property where the appellant lived and a second, non-exempt property assessed to have a market value of $6,670, with deeds dated in 1997 and 2002, respectively.[5]

---

[3]
Again, these receipts do not add up to the amount of monthly expenses she had listed on her sworn statement of indigency. However, the trial court never called for further documentary verification of her monthly expenses, and so the appellant's declaration of expenses, having been sworn to, "should be accepted unless [it is] suspect in a manner that verification would not remedy." *Whitehead v. State*, 130 S.W.3d 866, 875 (Tex. Crim. App. 2004).

[4]
The appellant said nothing about any assets in her statement of indigency. She made no mention of property, either real or personal, that might be readily liquidated to pay the costs of an appeal.

[5]
There was conflicting evidence whether the appellant actually owned the house in which she lived. The trial court ultimately found this property to be subject to a homestead exemption, and therefore did not consider it an asset for purposes of determining the appellant's indigency.

The State also introduced evidence to impugn the veracity of the appellant's sworn statement of indigency. The appellant's indigency statement had implied that a portion of her monthly expenses was devoted to the support of minor children. In order to show that the appellant had no dependent children presently living with her, the State offered a copy of a child-support lien, filed in 2004, showing "unpaid support in the amount of $5,834.00." The State requested judicial notice of the lien to show that the appellant had no dependents living with her that would contribute to her expenses. Although there were no objections to admission of the child-support lien, the trial court neither took judicial notice of it, as requested, nor ever formally admitted it into evidence.

The trial court then asked the appellant to supply a copy of her 2006 tax return, which she had submitted in support of an earlier affidavit requesting counsel for her trial. After the State rested, the appellant also offered court records from her unsuccessful attempt to have tenants evicted from her second, non-exempt property in August 2000, attempting to show that this real property neither generated income nor was readily convertible to cash, and therefore should not be considered as an asset. At the conclusion of the hearing the trial court orally announced that it found the appellant "no longer indigent."

Later, the trial court issued written findings of fact and conclusions of law. Based upon the appellant's income-tax return, the trial court found that she had an income of $10,905 for the 2006 tax year.[6] The trial court also found that she had current monthly

---

[6] The appellant argues that the trial court mistakenly accepted the appellant's *gross* reported

expenses of $338.78, non-exempt real property with a value of $6,670, and non-exempt personal property, the antiques, worth $3,000. At the time of the appellant's hearing, a defendant qualified as indigent in Navarro County if his net household income did not exceed 100% of the United States Department of Health and Human Services Poverty Guidelines ($10,400 in 2008) and the value of his non-exempt assets did not exceed $1,000 or the estimated cost of obtaining competent private legal counsel.[7] Applying these criteria, the trial court found that the appellant had both sufficient income and sufficient non-exempt assets to exceed the threshold for indigency. The trial court further determined that the appellant failed to rebut the State's evidence at her indigency hearing and that she had been erroneously appointed counsel in her initial trial. The trial court expressly concluded that the appellant "is not indigent and has the financial means and resources to employ counsel of her choice to represent her on appeal." However, the trial court made no separate ruling on the appellant's request for a free record. The findings of fact and conclusions of law make no mention of the notice of a child-support lien.

The appellant, representing herself, appealed the trial court's indigency determination to the Tenth Court of Appeals. In a published opinion, the court of appeals held that the trial

---

income for 2006, which was $10,905, rather than her net income of $5,590. The State concedes that the trial court thus erred, but argues that the record nevertheless provided the trial court with ample reason to doubt the appellant's claim, in her sworn statement of indigency, that her income at the time of the hearing, in February of 2008, was only $550 per month. In light of our ultimate disposition, *infra*, we find the trial court's error immaterial.

[7] NAVARRO COUNTY STANDARDS RELATING TO THE APPOINTMENT OF COUNSEL TO INDIGENTS § XII (2) (2002).

court's "findings [were] supported by the evidence."[8]  Accordingly, it found the trial court did not abuse its discretion in finding the appellant to be non-indigent.[9]  The appellant filed a pro se petition for discretionary review challenging the court of appeals's determination that the trial court did not abuse its discretion and asserting that the court of appeals based its decision on "false statements and twisted facts."[10]

## STANDARD OF REVIEW

A defendant is indigent for purposes of the appointment of appellate counsel if he is "not financially able to employ counsel."[11]  For purposes of qualifying as an indigent in order to receive a copy of the record furnished without charge, a defendant must be unable to "pay or give security for the appellate record."[12]  Indigency determinations are made at the time the issue is raised and are decided on a case-by-case basis.[13]  Determining indigency for purposes of appointing counsel and indigency for purposes of obtaining a free record are

---

[8]

*McFatridge v. State*, 262 S.W.3d 907, 912 (Tex. App.—Waco 2008).

[9]

*Id*.  Like the trial court, the court of appeals made no separate determination with respect to the free counsel and a free record, holding only that the record supported the trial court's determination that the appellant "is not indigent."  *Id*.

[10]

Appellant's Petition for Discretionary Review, at 2.

[11]

TEX. CODE CRIM. PROC. art. 1.051(b).

[12]

TEX. R. APP. P. 20.2.

[13]

*Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004) (quoting *Gray v. Robinson*, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988)).

discrete inquiries, but the factors to be considered are the same.[14] A defendant can be found indigent for one purpose without being found indigent for the other.[15] Relevant to both indigency determinations are "the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant."[16] Each county should have guidelines and financial standards that it applies to determine whether a defendant is indigent for purposes of appointing counsel.[17]

This Court has adopted a two-step process to guide courts in making indigency determinations for purposes of a free record for appeal. First, the defendant must make a *prima facie* showing of indigency.[18] Once the defendant satisfies this initial burden of production, the burden then shifts to the State to show that the defendant is not, in fact, indigent.[19] This means, essentially, that unless there is some basis in the record to find the defendant's *prima facie* showing to be inaccurate or untrue, the trial court should accept it

---

[14] *Whitehead,* 130 S.W.3d at 878.

[15] *Id.* As we have noted, however, neither the trial court nor the court of appeals seems to have made these determinations separately.

[16] TEX. CODE CRIM. PROC. art. 26.04(m).

[17] TEX CODE CRIM. PROC. art. 26.04(l).

[18] *Whitehead,* 130 S.W.3d at 878.

[19] *Id.* at 874.

as sufficient to find him indigent.[20]  After a defendant establishes a *prima facie* showing of indigency, "an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination."[21]  In *Whitehead*, we recognized that the two-step process outlined above also applies when determining whether a person is indigent for purposes of appointed counsel.[22]  A reviewing court should uphold a trial court's ruling denying indigent status only if it finds that the trial court, having utilized this two-step process, "reasonably" believed the defendant was not indigent.[23]

A reviewing court may not consider facts that were not developed in the record.[24]  In

---

[20]

  *Id.* at 875-76.  Once the defendant has made out a *prima facie* case for indigency, both the burden of production and the ultimate burden of persuasion fall upon the State to show that the defendant is *not* indigent.  This does not invariably mean that the State must actually present additional evidence.  Rather, it simply means that there must be *some* basis in the record, from whatever source—including evidence embedded in the defendant's own *prima facie* case—to question the defendant's indigency.  Unless there is such evidence in the record from any source, however, the fact that the burden has shifted to the State means that the trial court must accept the defendant's *prima facie* case as determinative of indigency.  *Id.*

[21]

  *Id.*

[22]

  *Whitehead*, 130 S.W.3d at 874 (quoting *Snoke v. State*, 780 S.W.2d 210, 213 (Tex. Crim. App. 1989)).

[23]

  *Id.* at 879.

[24]

  *See id.* at 872 ("General considerations governing appellate review apply here.  An appellate court may not consider factual assertions that are outside the record, and a party cannot circumvent the prohibition by submitting an affidavit for the first time on appeal.") (footnote omitted); *see also Janecka v. State*, 937 S.W.2d 456, 476 (Tex. Crim. App. 1996) (an appellant could not raise a claim that he faced severe depression and stress while waiting for his case to be appealed because the appellant had failed to establish a factual record to support his claim).

this case we must determine whether, based on the record from the indigency hearing and under the framework described above, the parties satisfied the necessary burdens of production and persuasion. The appellant contends that she met her evidentiary burden in her initial indigency hearing, entitling her to a free record and appointed counsel for appeal. The State concedes as much but answers that its rebuttal was sufficient to cast doubt on the defendant's indigency claim. If the State is correct that it has carried its burden to produce rebuttal evidence, the issue then devolves into whether it can be said that the State also satisfied its burden of persuasion in light of all the evidence produced at the hearing.

## ANALYSIS

At the hearing, the appellant presented some evidence supporting her indigency by providing her sworn statement and testimony about her rent expenses. We agree with the court of appeals that the appellant made a *prima facie* showing of indigency and satisfied her initial burden of production,[25] and, in the absence of any evidence at that point to cast doubt on her claims, her burden of persuasion. The burden of production and persuasion then shifted to the State to refute the appellant's proffered evidence.

### The Appellant's Income

In Navarro County, an appellant in 2008 was *not* indigent if *either* his take-home wages or salary or his net self-employment income exceeded $10,400 *or* the value of his non-

---

[25]

    *McFatridge v. State*, 262 S.W.3d, at 912.

exempt assets exceeded $1,000 or the estimated cost of obtaining competent legal counsel.[26]

The State has conceded that the trial court erred to regard the appellant's gross income for the year 2006 ($10,905) as probative of her net income for 2008.[27] It argues, nevertheless, that the trial court had enough reason to doubt the appellant's assertion in her sworn statement of indigency that her income was only $550 per month. We pretermit any discussion of the sufficiency of the appellant's income to raise her above the poverty level because we hold that, in any event, the record supports the trial court's finding—if only barely—that she had sufficient assets to afford both a record and appellate counsel.

### The Appellant's Non-Exempt Assets

The appellant now argues that the trial court abused its discretion by finding that the appellant could use her assets to finance her appeal. She tries through her brief to introduce

---

[26]

NAVARRO COUNTY STANDARDS RELATING TO THE APPOINTMENT OF COUNSEL TO INDIGENTS § XII (2002); 2008 Annual Update of the HHS Poverty Guidelines, 73 Fed. Reg. 3971 (Jan. 23, 2008).

[27]

The court of appeals compounded the trial court's mistake when it observed:

> The [trial] court based its finding regarding [the appellant's] income on her 2006 federal income tax return in which she claimed gross business income of $10,905 (and net profit of $5,990). [The appellant] offered no evidence to explain how or why her income in 2008 is less than it was two years earlier.

*McFatridge*, *supra*, at 912. The Navarro County standard looks to the "net household income" of a self-employed person, not his gross business income, in determining indigency. It is this "net household income" that must exceed $1,000 or the cost of obtaining competent legal counsel to entitle an appellant to indigent status. In fact, the appellant's annual income ($550 x 12 months = $6,600) was actually *more* than her "net profit" in 2006, but nevertheless well below the $10,400 poverty level.

new facts to explain the evidence in the record in order to resolve ambiguities in her favor on appeal. For example, the appellant claims that the record contains no evidence to show that her antiques could be sold.[28] But neither does the record affirmatively show that they could *not* be sold, and the appellant's attempt to barter them for the court reporter's services demonstrates a belief on her part that they had a market value of at least $3,000. Appellate review is limited to only what is contained in the record.[29] The proper place for the appellant to have explained that the antiques were in reality worthless, notwithstanding her representations to the court reporter, was at her hearing. Absent any such testimony in the record, the trial court did not abuse its discretion in finding that the court reporter's testimony satisfied the State's burden of production, and, ultimately, persuasion with respect to the availability of the antiques to contribute to the costs of the appellant's appeal.

Similarly, if the appellant wished to respond to the State's evidence tending to show that the appellant actually owned the second, non-exempt real property, the appellant should have presented additional, supporting evidence to that effect at the indigency hearing. The State presented county records showing that the appellant was the record owner of that property, and that it had an appraised value of $6,670. To rebut the State's presentation, the appellant produced court records dismissing the eviction proceedings brought by the appellant for her second, non-exempt property for lack of jurisdiction. The appellant's

---

[28] Appellant's Brief on the Merits, at 18.

[29] *Whitehead*, 130 S.W.3d, at 872.

counsel argued that this dismissal showed that the appellant did not have clear title to the property, and that it was therefore unavailable for purposes of raising funds for her appellate costs. But there was no explanatory *testimony* to this effect, and the appraisal district record indicates that the property was conveyed to the appellant in 2002, after the date of the attempted eviction proceedings in 2000. On this state of the record, the trial court could rationally have found that the appellant had at least $9,670 ($3,000 in antiques plus $6,670 in non-exempt real property) worth of assets to devote to the costs of her appeal.

The appellant argues that her child-support obligation should have been considered, positing that the failure to do so constituted an abuse of discretion. The notice of child-support lien, dated August 2004, states that the appellant owed $5,834 in unpaid support. Assuming the debt was still wholly outstanding, and subtracting this amount from the $9,670 of assets the trial court determined that the appellant owned, would leave appellant with $3,836 of assets—an amount that still exceeds Navarro County standards for indigency.[30] In any event, the notice of child-support lien was never formally introduced into evidence at the hearing and was not mentioned in the trial court's findings and conclusions. We presume that the trial court did not take the lien into account; nor was it an abuse of discretion for the trial court to fail to do so when neither party insisted that it should during the indigency

---

[30] Navarro County Standards Relating to the Appointment of Counsel to Indigents § XII (2)(a)(2) (2002). In her brief on discretionary review, the appellant argues that, by law, the appellant would also owe interest on the unpaid child support. While this may well be true, there is nothing in the record to support this assertion, and no indication of what that interest might have amounted to by the time of the indigency hearing.

hearing.[31]

After reviewing all of the evidence at the indigency hearing, the trial court found the State's characterization of the appellant's assets to be more persuasive. If the reporter's record cost $3,000,[32] the appellant would have at least $6,670 worth of assets left over to devote to the cost of an appellate attorney. The record contains no estimate of what the cost of competent private legal counsel would be for a typical DWI appeal in Navarro County, but we have no reason to believe it should exceed $6,670. It is not the reviewing court's job to determine whether the appellant was indigent for purposes of appeal. Rather, the reviewing court's role is to determine whether the evidence produced at the indigency hearing supports the trial court's ultimate determination. For purposes of a free record, we will uphold a trial court's non-indigency finding if there is credible evidence in the record supporting such a finding. For purposes of appointed appellate counsel, we will uphold a determination of non-indigency if the trial court reasonably believed, based on the record evidence, that the defendant was not indigent. Because we hold that the proper place for an appellant to introduce evidence challenging the State's rebuttal evidence is the initial indigency hearing, not on appeal or in a petition for discretionary review, we hold that the trial court's

---

[31] We note that the court of appeals made no mention whatsoever of the notice of a child-support lien in its opinion on appeal.

[32] In her motion for a free court reporter's record, the appellant asserted that the court reporter had estimated the cost of the record to be only $2,000. Here, we give the appellant the benefit of the doubt by relying on the greater amount, $3,000, that the court reporter testified she told the appellant was the estimated cost of the record during their mid-trial conversation.

determinations were reasonably supported by the evidence in both instances (free record and appellate counsel). Accordingly, we affirm the judgment of the court of appeals.


Delivered:     January 27, 2010
Publish