



# MEMORANDUM OPINION

No. 04-09-00823-CR

Michael Jason **BALDERAZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No 12, Bexar County, Texas
Trial Court No. 218116
Honorable Michael E. Mery, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:  September 29, 2010

ORDER AFFIRMED

Michael Jason Balderaz seeks to appeal his conviction for the offense of driving while intoxicated. As a preliminary matter, Balderaz challenges the trial court's order denying his request for court-appointed appellate counsel and a free record on appeal. We affirm the trial court's order.

**BACKGROUND**

The limited record before us shows that, following his trial and conviction, Balderaz filed a document in the trial court entitled "Pauper's Oath for Appeal." In this document, Balderaz claimed he was indigent and had no money to hire an attorney to represent him on appeal or to pay for the record on appeal. On February 10, 2010, the trial court held an evidentiary hearing on Balderaz's assertion of indigency, and found the statements in his pauper's oath were untrue.

The only witness to testify at the hearing was Balderaz. Balderaz testified he was currently employed by J.W. Marriott performing maintenance duties. New to this job, Balderaz was still on probationary status. Balderaz's salary was $16.17 per hour and he worked a minimum of forty hours per week. Thus, Balderaz's annual base salary was $33,633.60. In addition, Balderaz sometimes had the opportunity to work up to ten hours of overtime per week at the rate of $24.26 per hour. Balderaz lived with his wife, his seven-year-old step-son, and his two-year-old daughter. Balderaz's wife did not work outside of the home. Balderaz and his wife owned two cars, but they did not own a house. The couple had between three hundred-fifty and four hundred dollars in the bank. Balderaz also owned a motorcycle.

Balderaz's monthly expenses included $895.00 for rent, $180.00 for electricity, $70.00 for water utilities, $355.00 for a car loan payment, $220.00 for gasoline, and between $125.00 and $175.00 for cell phone service. His family also spent about $540.00 per month on groceries. Balderaz's debts included $6,000.00 in school loans and $3,000 in credit card debt. Balderaz did not say if he was making monthly payments on either of these debts. In addition, Balderaz said he had unpaid medical bills for his family, but did not specify the amount of this debt or whether he was making payments on this debt. Balderaz testified his motorcycle was not in working order, but if he repaired it and made it operable, it would probably be worth about $8,500.00.

Balderaz further testified that he had obtained a loan to purchase his motorcycle, and the outstanding balance on the loan was about $16,000.00. Balderaz also said there was a balance owed on his wife's wedding ring, which they had purchased on a payment plan. Balderaz characterized this purchase as something "I couldn't afford" and "a bad financial decision."

Balderaz further testified that he had paid a total of $10,000.00 in attorney's fees to his trial counsel in this case. Half of the attorney's fees were paid from a $5,000.00 loan he obtained from his parents; the other half was paid by Balderaz himself over a period of several years. Although Balderaz's parents were not requiring him to pay the loan back immediately, they were unwilling to loan him additional funds for this appeal.

Evidence of the actual costs of hiring appellate counsel and of obtaining the record was not presented. Instead, Balderaz stated that he was aware that appellate counsel might cost more than $7,500.00 and the record might cost more than $2,000.00. Balderaz then stated he was not capable of paying either of these amounts.

After hearing all the evidence, the trial judge stated "[a]ccording to the 2009 Poverty [G]uidelines, the testimony the Court has received does not justify a finding of indigency at this time."[1] The trial judge then signed an order denying Balderaz's request for court-appointed appellate counsel and a free record on appeal.

### APPLICABLE LAW

Recently, in *McFatridge v. State*, the Court of Criminal Appeals articulated the standard of review for indigency determinations made by the trial court:

> A defendant is indigent for purposes of the appointment of appellate counsel if he is not financially able to employ counsel. For purposes of qualifying

---

[1] The 2009 federal poverty guideline for a family of four was an annual income of $22,050.00. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ANNUAL UPDATE OF THE HHS POVERTY GUIDELINES, 74 Fed. Reg. 4199-4201 (Jan. 23, 2009).

as an indigent in order to receive a copy of the record furnished without charge, a defendant must be unable to pay or give security for the appellate record. Indigency determinations are made at the time the issue is raised and are decided on a case-by-case basis. Determining indigency for purposes of appointing counsel and indigency for purposes of obtaining a free record are discrete inquiries, but the factors to be considered are the same. A defendant can be found indigent for one purpose without being found indigent for the other. Relevant to both indigency determinations are the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant. Each county should have guidelines and financial standards that it applies to determine whether a defendant is indigent for purposes of appointing counsel.

This Court has adopted a two-step process to guide courts in making indigency determinations for purposes of a free record for appeal. First, the defendant must make a prima facie showing of indigency. Once the defendant satisfies this initial burden of production, the burden then shifts to the State to show that the defendant is not, in fact, indigent. This means, essentially, that unless there is some basis in the record to find the defendant's prima facie showing to be inaccurate or untrue, the trial court should accept it as sufficient to find him indigent. After a defendant establishes a prima facie showing of indigency, an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination. In *Whitehead*,[2] we recognized that the two-step process outlined above also applies when determining whether a person is indigent for purposes of appointed counsel. A reviewing court should uphold a trial court's ruling denying indigent status only if it finds that the trial court, having utilized this two-step process, reasonably believed the defendant was not indigent.

309 S.W.3d 1, 5-6 (Tex. Crim. App. 2010) (internal citations and quotations omitted).

**DISCUSSION**

Balderaz argues the trial judge abused his discretion in determining he was not indigent. According to Balderaz, his testimony shows he is incapable of paying for legal counsel and the record in this case. Balderaz urges that he met his burden to establish indigency, pointing out that the State offered no evidence to rebut his testimony. The State counters Balderaz failed to make a prima facie showing of indigency, and therefore, it was not required to submit any evidence to

---

[2]*Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004).

rebut Balderaz's assertion of indigency. The State argues the trial judge's non-indigency determination should be affirmed.

As the reviewing appellate court, it is not our role to determine whether Balderaz is indigent for purposes of appeal. *See McFatridge*, 309 S.W.3d at 9. Rather, our role is to determine if the evidence produced at the indigency hearing supports the trial judge's non-indigency determination. *See id*. For purposes of a free record, an appellate court will uphold a trial court's non-indigency finding if there is credible evidence in the record supporting such a finding. *Id*. For purposes of appointed appellate counsel, an appellate court will uphold that determination of non-indigency if the trial court reasonably believed, based on the record evidence, that the defendant was not indigent. *Id*. Moreover, as the reviewing appellate court, we may not consider facts that were not developed in the record. *Id*. at 6.

According to Balderaz's own testimony, he had about $2,435.00 in monthly expenses, and earned, at a minimum, about $2,802.80 per month. Balderaz also had the potential to earn as much as $1,051.27 per month in overtime. Thus, the evidence showed Balderaz's income exceeded his expenses by at least $367.80 per month, and possibly as much as $1,419.07 per month. Based on the record evidence, the trial court could have reasonably believed that Balderaz had funds that could be used to pay for appellate counsel and the record on appeal. The evidence also showed Balderaz had personal property. The trial court could have reasonably believed Balderaz had personal property that could be sold and the proceeds used to pay for appellate counsel and the record on appeal. Moreover, the evidence failed to show the actual costs of retaining appellate counsel and obtaining the record in this case. We conclude Balderaz failed to meet his prima facie burden of showing that he was unable to employ counsel or that he was unable to pay or give security for the record.

We hold the record evidence supports the trial court's determination of non-indigency. Accordingly, we affirm the trial court's order denying Balderaz's request for court-appointed appellate counsel and a free record on appeal.

Karen Angelini, Justice

DO NOT PUBLISH.