

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00201-CR

MILLARD EARL VENCILL                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM COUNTY COURT AT LAW NO. 2 OF PARKER COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

A jury found Appellant Millard Earl Vencill guilty of misdemeanor driving while intoxicated and recommended a probated sentence of 180 days' imprisonment. Appellant filed a pro se notice of appeal, and we abated for a hearing in the trial court to determine whether Appellant was indigent for purposes of obtaining a free record and appointment of appellate counsel. The

---

[1]*See* Tex. R. App. P. 47.4.

trial court determined that Appellant was not indigent, and Appellant, proceeding pro se, thereafter filed an original and a supplemental brief that collectively contain sixteen points. We affirm.

## II. Background[2]

Appellant was charged by information with driving while intoxicated. According to Appellant's pretrial motion to suppress and brief in support, which were filed on Appellant's behalf by his retained counsel, a private citizen effected Appellant's initial detention after watching Appellant, at 10:15 a.m., cross over a yellow highway dividing line, follow another vehicle too closely, and cross onto the shoulder of the highway. When Appellant stopped his vehicle at the traffic light near the Parker County Courthouse, the witness exited his vehicle, approached Appellant's vehicle, and took Appellant's car keys. A Weatherford police officer responded, administered three field sobriety tests, and arrested Appellant for driving while intoxicated. Trial was before a jury, and the jury found Appellant guilty and recommended a probated 180-day sentence with a fine of $750. The trial court sentenced Appellant accordingly.

The trial court subsequently permitted Appellant's retained counsel to withdraw, and Appellant filed a pro se notice of appeal. After being informed that

---

[2]As discussed below, there is no reporter's record of the trial or any pretrial hearings relating to this appeal. Thus, our recitation of the circumstances of Appellant's arrest and conviction is based on information contained in the clerk's record. There is, however, a reporter's record of the abatement hearing in which Appellant attempted to establish his indigence.

Appellant had not paid or made arrangements to pay the estimated $2,400 cost for the reporter's record and permitting Appellant an opportunity to respond or make arrangements, we abated this appeal for a hearing in the trial court to determine whether Appellant desired to prosecute this appeal, whether he is indigent for purposes of obtaining a free record, and whether he should have counsel appointed to represent him on appeal.

The trial court conducted an evidentiary hearing at which only Appellant testified. Furthermore, the only exhibit was Appellant's Affidavit of Indigency and Application for Court Appointed Attorney. Appellant testified that he is not married, is not employed, and does not have dependents or children under the age of eighteen. He also testified that he is disabled, that his total monthly income is the $1,750 he receives from the Social Security Administration, and that his monthly expenses total $1,667 plus gasoline for his vehicle. Appellant testified that he does not maintain bank accounts and deals only with cash and that he has approximately $100,000 equity in his home, which is his homestead. Otherwise, Appellant testified that he owns a 1976 boat worth $500; a 1960 tractor worth $500; a 1970 trailer worth $500; a 1964 Chevelle worth $500; a 1964 Chevrolet worth $500; a 1964 truck worth $100; and various items of personal property such as jewelry, household furniture, appliances, tools, and clothing worth a total of $2,500. Appellant also testified that he owns a 2005 Chevrolet 1500 truck. However, the value of the 2005 Chevrolet truck was inaudible to the court reporter and is also not listed on Appellant's affidavit of

3

indigency. Thus, excluding the equity in his homestead, Appellant's testimony established that he owns personal property he valued at $5,100 plus the value of the 2005 Chevrolet truck. According to Appellant's affidavit of indigency, an unnamed attorney quoted him $5,000 to represent him on appeal.

At the conclusion of the hearing, the trial court determined, based in large part on the equity Appellant has in his homestead, that Appellant is not indigent. In its findings of fact and conclusions of law, the trial court stated that Appellant was not entitled to a free record or the appointment of counsel at government expense. This court then set a new deadline for preparation of the reporter's record and notified Appellant of that new deadline. Because Appellant did not pay for or make arrangements to pay for the reporter's record by the new deadline, we informed Appellant by letter that the court would consider and decide only those issues or points that do not require a reporter's record for a decision. *See* Tex. R. App. P. 37.3(c). Appellant subsequently filed an original and a supplemental brief, and the State filed a responsive brief.

### III. Indigency Determination

In his sixteenth point, Appellant contends that the trial court "was not ruling within the scope of his judicial requirements of justice" because "there was a preponderance of evidence given by [Appellant] that there was no money available to pay the court reporter or for a[n appellate] attorney." We construe Appellant's sixteenth point to argue that the trial court abused its discretion by

4

determining that Appellant is not indigent for purposes of his entitlement to a free record and appointment of appellate counsel.

## A.  Applicable Law

Although the factors to be considered are the same, determining indigency for purposes of obtaining a free record and for purposes of appointing counsel are discrete inquiries.  *McFatridge v. State*, 309 S.W.3d 1, 5–6 (Tex. Crim. App. 2010) (citing *Whitehead v. State*, 130 S.W.3d 866, 878 (Tex. Crim. App. 2004)). For a free copy of the record, a defendant is indigent if he is unable to "pay or give security for the appellate record."  Tex. R. App. P. 20.2.  For appointment of appellate counsel, a defendant is indigent if he is "not financially able to employ counsel."  Tex. Code Crim. Proc. Ann. art. 1.051(b) (West Supp. 2011).  "A defendant can be found indigent for one purpose without being found indigent for the other."  *McFatridge*, 309 S.W.3d at 6.

Determination of indigency is made on a case-by-case basis and involves a two-part process: (1) the defendant must make a prima facie showing of indigency, and (2) if the defendant satisfies that burden, the burden then shifts to the State to show the defendant is not, in fact, indigent.  *Id.*; *Tuck v. State*, 215 S.W.3d 411, 414–15 (Tex. Crim. App. 2007).  Then,

> unless there is some basis in the record to find the defendant's prima facie showing to be inaccurate or untrue, the trial court should accept it as sufficient to find him indigent.  After a defendant establishes a prima facie showing of indigency, an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination.  In *Whitehead*, we recognized that the two-step process outlined above

5

. . . applies when determining whether a person is indigent for purposes of appointed counsel. A reviewing court should uphold a trial court's ruling denying indigent status only if it finds that the trial court, having utilized this two-step process, reasonably believed the defendant was not indigent.

*McFatridge*, 309 S.W.3d at 6 (internal quotations and citations omitted); *see also* *Whitehead*, 130 S.W.3d at 874.

To determine if a defendant is indigent, the trial court may consider the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant, as well as the defendant's affidavit of indigency, sworn testimony, and proper financial documentation. Tex. Code Crim. Proc. Ann. art. 26.04(m)–(n) (West Supp. 2011); *McFatridge*, 309 S.W.3d at 5–6; *Whitehead*, 130 S.W.3d at 877–78. "The ability of the defendant to borrow funds is something that may be taken into account in considering how the defendant's assets and property relate to the ability to pay." *Whitehead*, 130 S.W.3d at 878 (citing *Goffney v. Lowry*, 554 S.W.2d 157, 159 (Tex. 1977)). However, "a defendant should not be required to borrow money that can never be repaid except by depriving the defendant of the necessities of life." *Id.* While the appellate court gives deference to the trial court's ruling, the trial court's discretion is neither "unfettered" nor "unbridled," and the trial court must have a reasonable articulable basis if it discounts or disregards the appellant's evidence. *Id.* at 875–76.

**B. Discussion**

In *McFatridge*, the court of criminal appeals held that the trial court did not abuse its discretion by determining that McFatridge was not indigent. *See* 309 S.W.3d at 8–9. There, McFatridge's monthly income was $550, and her monthly expenses totaled $484. *Id.* at 3. However, she owned $3,000 worth of antiques and nonexempt real property valued at $6,670. *Id.* at 8. The court first deducted the $3,000 estimated cost of the reporter's record and noted that McFatridge "would have at least $6,670 worth of assets left over to devote to the cost of an appellate attorney." *Id.* at 9. Thus, the court affirmed the trial court's determinations that McFatridge was not indigent for purposes of obtaining a free record or for the appointment of appellate counsel. *Id.*

The record in this case contains evidence that the court reporter estimated the cost of the appellate record to be $2,400 and that an unnamed attorney would charge Appellant $5,000 for the appeal. Appellant's testimony established that, excluding the equity in his homestead, he had $6,100 plus the value of the 2005 Chevrolet truck worth of personal property at the time of the indigency hearing. After first deducting the estimated $2,400 cost for the reporter's record, Appellant would have $3,700 plus the value of the 2005 Chevrolet truck to use toward the retention of appellate counsel. In addition, Appellant had approximately $100,000 of equity in his homestead that might have been used as collateral for a loan to cover the costs of the appeal. *See Whitehead*, 130 S.W.3d at 878 (stating that a defendant's ability to obtain a loan is a valid

7

consideration for indigency purposes and noting that Whitehead had, among other things, "$10,000 worth of equity in her home").

Using the two-part process outlined by the court of criminal appeals for determinations of indigency, we hold that credible evidence supports the trial court's determination that Appellant is not indigent for purposes of a free record and that the trial court could have reasonably believed based on that evidence that Appellant was not indigent for purposes of appointment of appellate counsel. *See McFatridge*, 309 S.W.3d at 9; *Whitehead*, 130 S.W.3d at 878–79. We therefore hold that the trial court did not abuse its discretion in either instance, and we overrule Appellant's sixteenth point.

## IV. Remaining Points

In his fifteen remaining points, Appellant contends that his arrest by the private citizen was improper, that the arresting officer discriminated against him because he is disabled, that his attorney provided ineffective assistance in several ways, that the trial court admitted evidence that should have been suppressed, that his conviction was supported only by the opinion testimony of one witness, that he should not have been convicted of driving while intoxicated because he was taking medication prescribed by his doctor, and that there was a computer glitch when the jury lists were being prepared. Each of these points depend upon the existence of a reporter's record either for their merit or to determine whether they were preserved for appellate review. Because Appellant did not pay for or make arrangements to pay for a reporter's record, we cannot

8

review Appellant's first fifteen points and therefore overrule them. *See* Tex. R. App. P. 37.3(c); *Akin v. State*, No. 02-08-00062-CR, 2009 WL 806902, at *1 (Tex. App.—Fort Worth Mar. 26, 2009, pet. ref'd) (mem. op., not designated for publication) (holding points requiring reporter's record not preserved for appeal by failure to pay for reporter's record).

## V. Conclusion

Having overruled each of Appellant's points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 9, 2012