02-10-201-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00201-CR

 

 


 
 
 Millard Earl Vencill
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Court at Law No. 2 OF Parker COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          A
jury found Appellant Millard Earl Vencill guilty of misdemeanor driving while
intoxicated and recommended a probated sentence of 180 days’ imprisonment. 
Appellant filed a pro se notice of appeal, and we abated for a hearing in the
trial court to determine whether Appellant was indigent for purposes of
obtaining a free record and appointment of appellate counsel.  The trial court
determined that Appellant was not indigent, and Appellant, proceeding pro se,
thereafter filed an original and a supplemental brief that collectively contain
sixteen points.  We affirm.

II. 
Background[2]

          Appellant
was charged by information with driving while intoxicated. According to
Appellant’s pretrial motion to suppress and brief in support, which were filed
on Appellant’s behalf by his retained counsel, a private citizen effected
Appellant’s initial detention after watching Appellant, at 10:15 a.m., cross
over a yellow highway dividing line, follow another vehicle too closely, and
cross onto the shoulder of the highway.  When Appellant stopped his vehicle at
the traffic light near the Parker County Courthouse, the witness exited his
vehicle, approached Appellant’s vehicle, and took Appellant’s car keys.  A
Weatherford police officer responded, administered three field sobriety tests,
and arrested Appellant for driving while intoxicated.  Trial was before a jury,
and the jury found Appellant guilty and recommended a probated 180-day sentence
with a fine of $750.  The trial court sentenced Appellant accordingly.

The
trial court subsequently permitted Appellant’s retained counsel to withdraw,
and Appellant filed a pro se notice of appeal.  After being informed that
Appellant had not paid or made arrangements to pay the estimated $2,400 cost
for the reporter’s record and permitting Appellant an opportunity to respond or
make arrangements, we abated this appeal for a hearing in the trial court to
determine whether Appellant desired to prosecute this appeal, whether he is
indigent for purposes of obtaining a free record, and whether he should have
counsel appointed to represent him on appeal.

          The
trial court conducted an evidentiary hearing at which only Appellant
testified.  Furthermore, the only exhibit was Appellant’s Affidavit of
Indigency and Application for Court Appointed Attorney.  Appellant testified
that he is not married, is not employed, and does not have dependents or
children under the age of eighteen.  He also testified that he is disabled,
that his total monthly income is the $1,750 he receives from the Social
Security Administration, and that his monthly expenses total $1,667 plus
gasoline for his vehicle.  Appellant testified that he does not maintain bank
accounts and deals only with cash and that he has approximately $100,000 equity
in his home, which is his homestead. Otherwise, Appellant testified that he
owns a 1976 boat worth $500; a 1960 tractor worth $500; a 1970 trailer worth
$500; a 1964 Chevelle worth $500; a 1964 Chevrolet worth $500; a 1964 truck
worth $100; and various items of personal property such as jewelry, household
furniture, appliances, tools, and clothing worth a total of $2,500.  Appellant
also testified that he owns a 2005 Chevrolet 1500 truck.  However, the value of
the 2005 Chevrolet truck was inaudible to the court reporter and is also not
listed on Appellant’s affidavit of indigency.  Thus, excluding the equity in
his homestead, Appellant’s testimony established that he owns personal property
he valued at $5,100 plus the value of the 2005 Chevrolet truck.  According to
Appellant’s affidavit of indigency, an unnamed attorney quoted him $5,000 to
represent him on appeal.

          At
the conclusion of the hearing, the trial court determined, based in large part
on the equity Appellant has in his homestead, that Appellant is not indigent.  In
its findings of fact and conclusions of law, the trial court stated that
Appellant was not entitled to a free record or the appointment of counsel at
government expense.  This court then set a new deadline for preparation of the
reporter’s record and notified Appellant of that new deadline.  Because
Appellant did not pay for or make arrangements to pay for the reporter’s record
by the new deadline, we informed Appellant by letter that the court would
consider and decide only those issues or points that do not require a reporter’s
record for a decision.  See Tex. R. App. P. 37.3(c).  Appellant
subsequently filed an original and a supplemental brief, and the State filed a
responsive brief.

III. 
Indigency Determination

          In
his sixteenth point, Appellant contends that the trial court “was not ruling
within the scope of his judicial requirements of justice” because “there was a
preponderance of evidence given by [Appellant] that there was no money
available to pay the court reporter or for a[n appellate] attorney.”  We
construe Appellant’s sixteenth point to argue that the trial court abused its
discretion by determining that Appellant is not indigent for purposes of his
entitlement to a free record and appointment of appellate counsel.

A. 
Applicable Law

          Although
the factors to be considered are the same, determining indigency for purposes
of obtaining a free record and for purposes of appointing counsel are discrete
inquiries.  McFatridge v. State, 309 S.W.3d 1, 5–6 (Tex. Crim. App. 2010)
(citing Whitehead v. State, 130 S.W.3d 866, 878 (Tex. Crim. App. 2004)).
 For a free copy of the record, a defendant is indigent if he is unable to “pay
or give security for the appellate record.”  Tex. R. App. P. 20.2.  For
appointment of appellate counsel, a defendant is indigent if he is “not
financially able to employ counsel.”  Tex. Code Crim. Proc. Ann. art. 1.051(b)
(West Supp. 2011).  “A defendant can be found indigent for one purpose without
being found indigent for the other.”  McFatridge, 309 S.W.3d at
6.

Determination
of indigency is made on a case-by-case basis and involves a two-part process:
(1) the defendant must make a prima facie showing of indigency, and (2) if the
defendant satisfies that burden, the burden then shifts to the State to show
the defendant is not, in fact, indigent.  Id.; Tuck v. State, 215
S.W.3d 411, 414–15 (Tex. Crim. App. 2007).  Then,

unless there is some
basis in the record to find the defendant’s prima facie showing to be
inaccurate or untrue, the trial court should accept it as sufficient to find
him indigent.  After a defendant establishes a prima facie showing of
indigency, an appellate court can uphold a trial court’s determination of
non-indigence only if the record contains evidence supporting such a
determination.  In Whitehead, we recognized that the two-step process
outlined above . . . applies when determining whether a person is indigent for
purposes of appointed counsel.  A reviewing court should uphold a trial court’s
ruling denying indigent status only if it finds that the trial court, having
utilized this two-step process, reasonably believed the defendant was not
indigent.

McFatridge,
309 S.W.3d at 6 (internal quotations and citations omitted); see also
Whitehead, 130 S.W.3d at 874.

To
determine if a defendant is indigent, the trial court may consider the
defendant’s income, source of income, assets, property owned, outstanding
obligations, necessary expenses, the number and ages of dependents, and spousal
income that is available to the defendant, as well as the defendant’s affidavit
of indigency, sworn testimony, and proper financial documentation.  Tex. Code
Crim. Proc. Ann. art. 26.04(m)–(n) (West Supp. 2011); McFatridge, 309
S.W.3d at 5–6; Whitehead, 130 S.W.3d at 877–78.  “The ability of the
defendant to borrow funds is something that may be taken into account in
considering how the defendant’s assets and property relate to the ability to
pay.”  Whitehead, 130 S.W.3d at 878 (citing Goffney v. Lowry, 554
S.W.2d 157, 159 (Tex. 1977)).  However, “a defendant should not be required to
borrow money that can never be repaid except by depriving the defendant of the
necessities of life.”  Id.  While the appellate court gives deference to
the trial court’s ruling, the trial court’s discretion is neither “unfettered”
nor “unbridled,” and the trial court must have a reasonable articulable basis
if it discounts or disregards the appellant’s evidence.  Id. at 875–76.

B. 
Discussion

          In
McFatridge, the court of criminal appeals held that the trial court did
not abuse its discretion by determining that McFatridge was not indigent.  See
309 S.W.3d at 8–9.  There, McFatridge’s monthly income was $550, and her
monthly expenses totaled $484.  Id. at 3.  However, she owned $3,000
worth of antiques and nonexempt real property valued at $6,670.  Id. at
8.  The court first deducted the $3,000 estimated cost of the reporter’s record
and noted that McFatridge “would have at least $6,670 worth of assets left over
to devote to the cost of an appellate attorney.”  Id. at 9.  Thus, the
court affirmed the trial court’s determinations that McFatridge was not
indigent for purposes of obtaining a free record or for the appointment of
appellate counsel.  Id.

          The
record in this case contains evidence that the court reporter estimated the
cost of the appellate record to be $2,400 and that an unnamed attorney would
charge Appellant $5,000 for the appeal.  Appellant’s testimony established
that, excluding the equity in his homestead, he had $6,100 plus the value of
the 2005 Chevrolet truck worth of personal property at the time of the
indigency hearing.  After first deducting the estimated $2,400 cost for the
reporter’s record, Appellant would have $3,700 plus the value of the 2005
Chevrolet truck to use toward the retention of appellate counsel.  In addition,
Appellant had approximately $100,000 of equity in his homestead that might have
been used as collateral for a loan to cover the costs of the appeal.  See
Whitehead, 130 S.W.3d at 878 (stating that a defendant’s ability to obtain
a loan is a valid consideration for indigency purposes and noting that
Whitehead had, among other things, “$10,000 worth of equity in her home”).

          Using
the two-part process outlined by the court of criminal appeals for
determinations of indigency, we hold that credible evidence supports the trial
court’s determination that Appellant is not indigent for purposes of a free
record and that the trial court could have reasonably believed based on that
evidence that Appellant was not indigent for purposes of appointment of
appellate counsel.  See McFatridge, 309 S.W.3d at 9; Whitehead,
130 S.W.3d at 878–79.  We therefore hold that the trial court did not abuse its
discretion in either instance, and we overrule Appellant’s sixteenth point.

IV. 
Remaining Points

          In
his fifteen remaining points, Appellant contends that his arrest by the private
citizen was improper, that the arresting officer discriminated against him
because he is disabled, that his attorney provided ineffective assistance in
several ways, that the trial court admitted evidence that should have been
suppressed, that his conviction was supported only by the opinion testimony of
one witness, that he should not have been convicted of driving while
intoxicated because he was taking medication prescribed by his doctor, and that
there was a computer glitch when the jury lists were being prepared.  Each of
these points depend upon the existence of a reporter’s record either for their
merit or to determine whether they were preserved for appellate review. 
Because Appellant did not pay for or make arrangements to pay for a reporter’s
record, we cannot review Appellant’s first fifteen points and therefore
overrule them.  See Tex. R. App. P. 37.3(c); Akin v. State, No.
02-08-00062-CR, 2009 WL 806902, at *1 (Tex. App.—Fort Worth Mar. 26, 2009, pet.
ref’d) (mem. op., not designated for publication) (holding points requiring
reporter’s record not preserved for appeal by failure to pay for reporter’s
record).

V. 
Conclusion

          Having
overruled each of Appellant’s points, we affirm the trial court’s judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.



DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 9, 2012









[1]See Tex. R. App. P. 47.4.





[2]As discussed below, there
is no reporter’s record of the trial or any pretrial hearings relating to this
appeal.  Thus, our recitation of the circumstances of Appellant’s arrest and
conviction is based on information contained in the clerk’s record.  There is,
however, a reporter’s record of the abatement hearing in which Appellant attempted
to establish his indigence.