Dissent by
Justice MOSELEY.
The factual circumstances surrounding the trial court’s determination that Michael Earitt White was not indigent are undisputed. There just seems to be information contained within those facts that interferes with a determination by this Court that the trial court erred in failing to find White to be indigent.
*809 We should closely examine the facts upon which the trial court relied in making its determination. It appears that there are at least two areas of White’s financial outgo which contribute to his apparently woeful financial condition that seem to be discretionary on his part — horses and automobiles. The majority does not correctly attribute obligations of proof to the State that I believe should have been borne by White.
The majority correctly points out the two-step process set out in McFatridge v. State, 309 S.W.3d 1, 5 (Tex.Crim.App.2010). That is, the person claiming to be indigent must first prove up a prima facie case of indigency. After that prima facie obligation is met, if the State contests that plea, its duty is to rebut.
White testified that he had six horses of dubious value which cost him some $480.00 per month to feed and house. There was no evidence given to contradict White’s claim that the value of the horses was, at the time of the hearing, “[Njothing. Horses are cheap now.” It is not the current value of the horses that is the problem here. Rather, it is White’s decision to maintain the pasturage and feeding of six horses at a price $120.00 per week (an average of about $480.00 per month) that is one of the problems in his attempt to prove that he is indigent. Although there is no evidence to rebut White’s claim that the value of the horses was very low, there is also no evidence that White could not have opted to sell them at a very low price (or even give them away) to reduce the outflow of his money by divesting himself of the obligation for their maintenance.
White also said that he owned two vehicles which were secured by loans of undisclosed amounts (for which White did not list payments on the loans as regular expenses), the provisions of which he said required him to maintain insurance on the automobiles. First, it is almost inconceivable that if there were, indeed, promissory notes that were secured by the automobiles, White would fail to mention the obligations at any time during his testimony. Second, White also testified that although his employer supplied him with a truck and fuel for it, he was forced to pay friends $60.00 per week (i.e., an average of almost $240.00 per month) for fuel. There is nothing in the record to reflect that White has made any effort to negotiate with his employer for some alternative means to provide transportation.
In other words, here are two instances of White making poor financial choices which, taken together, would free up almost $500.00 per month which White could otherwise direct toward the payment of fees for an appeal.
The majority points out that the State did not introduce evidence of the cost of appellate counsel in a case such as White’s. The State would have no burden of proof at all until White proved up a priina facie case that he was indigent. The Lamar County Indigence Determination Standards (the Standards) for determining whether an accused is indigent[5] specify that a factor to take into account is “the estimated cost of obtaining competent private legal representation for the matter(s) charged.” Would it not be White’s obligation as a part of his showing of a prima facie case to prove up the amount of this cost? It would seem that the burden on the State to disprove that White was indigent would arise only after that prima facie case was established by White. *810 There is no evidence that White has made any attempt whatsoever to retain counsel other than counsel appointed by the trial court. Would it not be White’s obligation (as part of his prima facie showing of indigency) that he has at least made an effort to retain counsel with his current assets?
When looking at the obligations of establishing White’s prima facie evidence that he was indigent, one of the factors set out in the Standards to determine indigency is a presumption that an accused is indigent when “[t]he accused’s net household income does not exceed 100% of the Poverty Guidelines as revised annually by the United States Department of Health and Human Services and published in the Federal Register.” White made no reference to those Standards; since they were not a part of the record, they are not evidence upon which White could rely to establish any such presumption.
The trial court had an advantage that we do not have. He was given the opportunity to observe White’s testimony and weigh his credibility as he testified. He also was provided (as we have been provided) the ability to take into account any (apparently nonexistent) attempts by White to retain appellate counsel on his own and to take into account that much of White’s cash flow problems have their genesis in the choices that he continues to make in keeping possession of and maintaining a herd of horses and retaining vehicles that cost him more to insure than the value they are to him.
In short, I believe that White failed to prove a prima facie case that he was indigent. Having failed to meet that prima facie obligation, the State had no responsibility to rebut something that he had not yet established. I would affirm the action of the trial court in refusing to find White as indigent.
I respectfully dissent.

. Lamar District Court & County Court Plan, available at http://tidc.tamu.edu/IDPlan/View Plan.aspx?PlanID=94